**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 19-4903

UNITED STATES OF AMERICA,

         Plaintiff - Appellant,

   v.

BOBBY PAUL EDWARDS,

         Defendant - Appellee.

Appeal from the United States District Court for the District of South Carolina, at Florence. R. Bryan Harwell, Chief District Judge. (4:17-cr-00907-RBH-1)

Submitted: January 29, 2021                    Decided: April 21, 2021

Before WILKINSON, NIEMEYER, and THACKER, Circuit Judges.

Vacated in part and remanded by published opinion. Judge Niemeyer wrote the opinion, in which Judge Wilkinson and Judge Thacker joined.

Eric S. Dreiband, Assistant Attorney General, Alexander V. Maugeri, Deputy Assistant Attorney General, Tovah R. Calderon, Elizabeth P. Hecker, Civil Rights Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant. Emily Deck Harrill, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Columbia, South Carolina, for Appellee.

NIEMEYER, Circuit Judge:

For over 5 years — from 2009 to 2014 — Bobby Edwards, the manager of J&J Cafeteria in Conway, South Carolina, effectively enslaved JCS (to whom we refer with the fictitious name "Jack"), forcing him to work at the restaurant over 100 hours per week without pay.

After Edwards was reported to the authorities, he pleaded guilty to forced labor, in violation of the Trafficking Victims Protection Act ("TVPA"), 18 U.S.C. § 1589. The district court sentenced Edwards to 120 months' imprisonment and ordered him to pay restitution of roughly $273,000, representing unpaid minimum wages and overtime compensation computed under the Fair Labor Standards Act ("FLSA"). While the court did order restitution of the full amount of those wages and overtime compensation, it did not include, as requested by the government, an "additional equal amount as liquidated damages," as provided by the FLSA, 29 U.S.C. § 216(b), for when minimum wages and overtime compensation have not been paid as required. The court concluded that liquidated damages under the FLSA were "statutory punitive damages" that were available only in civil cases.

The government appealed, contending that the district court erred in failing to include liquidated damages in its restitution award. For the reasons given herein, we agree. We therefore vacate the award of restitution and remand for its recalculation.

# I

In 1990, when Jack was 12 years old, he started working part-time at J&J Cafeteria as a dishwasher. He has an intellectual disability and an IQ of 70. After a few years of part-time work, Jack dropped out of high school and started working full-time at the restaurant. For the first 19 years of his employment, when the restaurant was owned and managed by different members of the Edwards family, Jack was always paid for his labor.

That, however, changed in September 2009, after Bobby Edwards took over the management of the restaurant. Edwards moved Jack into an apartment attached to the restaurant and forced him to work more than 100 hours per week without pay — usually 6:00 a.m. to 11:00 p.m. for 6 days and 6:00 a.m. to 2:00 p.m. on Sundays. Not only did Jack work long hours without pay, he was never given a day off. Edwards effected this forced labor by taking advantage of Jack's intellectual disability and keeping Jack isolated from his family, threatening to have him arrested, and verbally abusing him. His control over Jack also involved physical abuse. Once, when Jack failed to deliver fried chicken to the buffet as quickly as Edwards had demanded, Edwards dipped metal tongs into hot grease and pressed them to Jack's neck, resulting in a burn that fellow employees had to immediately treat. Other times, when Jack made supposed mistakes, Edwards whipped him with his belt, beat him with kitchen pans, and punched him with his fists. This treatment left Jack physically and psychologically scarred. Jack later said, "I felt like I was in prison. Most of the time I felt unsafe, like Bobby could kill me if he wanted. . . . I wanted to get out of that place so bad but couldn't think about how I could without being hurt."

3

Edwards's reign of terror over Jack ended in October 2014, when a relative of a restaurant employee alerted the authorities to Edwards's abuse, and the South Carolina Department of Social Services removed Jack from J&J Cafeteria.

Edwards thereafter pleaded guilty to one count of forced labor, in violation of the TVPA, 18 U.S.C. § 1589(a), and the district court sentenced him to 120 months' imprisonment. In addition, the district court ordered Edwards to pay restitution to Jack in the amount of $272,952.96. The government had requested an additional $272,952.96 in the form of liquidated damages, as provided by the FLSA, but the district court rejected that request, reasoning that FLSA liquidated damages are "statutory punitive damages" that are not available as restitution under the TVPA.

From the district court's judgment dated November 6, 2019, the government filed this appeal, contending that the district court erred in refusing to include liquidated damages in its order of restitution.

II

The TVPA, which "was passed to implement the Thirteenth Amendment against slavery or involuntary servitude," *Muchira v. Al-Rawaf*, 850 F.3d 605, 617 (4th Cir. 2017) (cleaned up), provides that a person who obtains forced labor shall be punished by a fine or imprisonment up to 20 years or both, 18 U.S.C. § 1589(a), (d). Specifically, it punishes any person who "knowingly provides or obtains the labor or services of a person by," among other means, "force, threats of force, physical restraint, or threats of physical restraint to that person or another person" or "serious harm or threats of serious harm to

4

that person or another person." *Id.* § 1589(a). In addition, the Act provides that the court "*shall* order restitution," *id.* § 1593(a) (emphasis added), "direct[ing] the defendant to pay the victim . . . *the full amount of the victim's losses*," *id.* § 1593(b)(1) (emphasis added). And it defines "full amount of the victim's losses" to have

> the same meaning as provided in section 2259(c)(2) ["mandatory restitution"] and shall in addition include the greater of [1] the gross income or value to the defendant of the victim's services or labor or [2] the value of the victim's labor as guaranteed under the minimum wage and overtime guarantees of the Fair Labor Standards Act (29 U.S.C. 201 *et seq*.).

*Id.* § 1593(b)(3). Section 2259(c)(2), in turn, defines "full amount of the victim's losses" to include "any costs incurred, or that are reasonably projected to be incurred in the future, by the victim, as a proximate result of the offenses involving the victim," including medical expenses, attorneys fees, and lost income. *Id.* § 2259(c)(2). And the Fair Labor Standards Act guarantees employees a federal minimum wage (currently $7.25 per hour) and overtime compensation at one-and-one-half times the employee's regular rate of pay for work over 40 hours per week. 29 U.S.C. § 206 (addressing minimum wages); *id.* § 207 (addressing overtime compensation). The FLSA also provides that an employer who fails to pay minimum wages and overtime compensation, as required by §§ 206 and 207, is liable for "liquidated damages" in an amount equal to the unpaid minimum wages and overtime compensation. *Id.* § 216(b).

In short, the TVPA mandates that a court order a person found guilty of obtaining forced labor to compensate the victim for the "*full amount* of the victim's losses," including, as one option of measurement, "*the value* of the victim's labor as guaranteed under the minimum wage and overtime guarantees of the [FLSA]." 18 U.S.C.

5

§ 1593(b)(1), (3) (emphasis added).  The question that we must now decide is whether that "value" of labor includes an award of "liquidated damages" for an employer's failure to pay minimum wages and overtime compensation on time.

In contending that the district court erred, the government argues simply that the "TVPA expressly incorporates by reference *all* of the FLSA's minimum wage and overtime guarantees, including the liquidated damages provisions in Section 216(b)" (emphasis added), and in support, it cites *United States v. Sabhnani*, 599 F.3d 215, 259 (2d Cir. 2010).

Our analysis begins with the text.  The TVPA mandates that the court order restitution in "the *full amount of the victim's losses*" resulting from the forced labor. 18 U.S.C. § 1593(b)(1) (emphasis added).  And, as defined, the "full amount" includes, as one option of measurement, "*the value* of the victim's labor as guaranteed under the minimum wage and overtime guarantees of the Fair Labor Standards Act (29 U.S.C. § 201 *et. seq.*)."  *Id.* § 1593(b)(3) (emphasis added).  This section references the entire FLSA, not just §§ 206 and 207 of the Act, which address minimum wages and overtime compensation, respectively.  To be sure, §§ 206 and 207 do fix the amount for compensating employees, but when the employer fails to comply with those provisions, the FLSA adds to that compensation liquidated damages of an amount equal to the unpaid wages and overtime compensation.  29 U.S.C. § 216(b).

The FLSA's liquidated-damages requirement makes perfect sense when considering that the goal is to provide full compensation to employees.  Minimum wages and overtime compensation must be paid on a current basis as work is done, such that an employee

6

receives the prescribed compensation without delay. But when an employer fails to pay those amounts, the employee suffers losses, which includes the loss of the use of that money during the period of delay. So fully compensating the employee requires accounting for losses from the delay. These additional losses could, in part, be compensated by interest. *See, e.g., Calderon v. GEICO Gen. Ins. Co.*, 809 F.3d 111, 133 (4th Cir. 2015) (awarding prejudgment interest "to make the plaintiff whole" (cleaned up)); *United States v. Smith*, 944 F.2d 618, 626 (9th Cir. 1991) ("Foregone interest is one aspect of the victim's actual loss"). But the FLSA provides more fully for losses from delay by providing liquidated damages, which can include not only interest but also other losses caused by the delay.

As well understood, liquidated damages are, by definition, compensation for "a reasonable estimation of actual damages." *Black's Law Dictionary* 490 (11th ed. 2019). And in the case of the FLSA, they compensate for the employer's "retention of a workman's pay" which "may well result in damages too obscure and difficult of proof for estimate other than by liquidated damages." *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 583–84 (1942). As the Supreme Court explained more particularly, the FLSA's liquidated-damages provision

> constitutes a Congressional recognition that failure to pay the statutory minimum *on time* may be so detrimental to maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers . . . that double payment must be made *in the event of delay* in order to insure restoration of the worker to that minimum standard of well-being.

*Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945) (cleaned up) (emphasis added). For this reason, awarding liquidated damages for violations of the FLSA's minimum-wage

7

and overtime provisions is the "norm." *See Mayhew v. Wells,* 125 F.3d 216, 220 (4th Cir. 1997). They are awarded to provide employees *full compensation* for violations of the FLSA and are therefore part of "the value of the victim's labor as guaranteed" by the FLSA. 18 U.S.C. § 1593(b)(3). Therefore, they must be included when calculating restitution under the TVPA according to "the value of the victim's labor." *Id.*; *see also Sabhnani*, 599 F.3d at 259–60; *United States v. Toure*, 965 F.3d 393, 404 (5th Cir. 2020).

Indeed, it would be inconsistent with the TVPA's requirement of providing restitution in "the full amount of the victim's losses" not to compensate a victim for losses incurred as a result of the delay in paying required wages and overtime compensation. 18 U.S.C. § 1593(b)(1); *see also United States v. Ritchie*, 858 F.3d 201, 215 (4th Cir. 2017) (recognizing that restitution requires a defendant to compensate the victim for "*all* of the actual losses that he caused"). And failing to compensate for delay would be particularly egregious in this case, where Jack was not paid for many years.

In reaching the opposite conclusion, the district court reasoned that FLSA liquidated damages are punitive and apply only in civil cases. Edwards joins in that argument, adding that reimbursing Jack for the withheld minimum wages and overtime compensation addresses "all of [Jack's] actual losses that [Edwards] caused, but no more." But this argument fails to understand that liquidated damages are generally an amount determined to be a reasonable estimation of *actual damages* that might be difficult to estimate or calculate, and that is their role in the FLSA. The Supreme Court has long so held, stating that "[t]he liquidated damages for failure to pay the minimum wages under sections [206 and 207] are *compensation, not a penalty or punishment* by the Government." *Overnight*

8

*Motor Transp. Co.*, 316 U.S. at 583 (emphasis added); *see also Roy v. Cnty. of Lexington,* 141 F.3d 533, 548 (4th Cir. 1998) (same).

At bottom, we conclude that "the value of the victim's labor as guaranteed under the minimum wage and overtime guarantees of the [FLSA]" includes liquidated damages provided by the FLSA. 18 U.S.C. § 1593(b)(3). This fulfills the defendant's obligation to compensate the victim for "the full amount of the victim's losses," which includes the *full value* of his labor. *Id.* § 1593(b)(1). Accordingly, we vacate the district court's award of restitution and remand for its recalculation consistent with this opinion.

VACATED IN PART AND REMANDED