Filed 9/28/21  Mondragon v. Santa Ana Healthcare & Wellness Centre CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| RUBYANN MONDRAGON, | B307872 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 19STCV26878) |
| v. | |
| SANTA ANA HEALTHCARE & WELLNESS CENTRE, LP, et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Rupert A. Byrdsong, Judge.  Affirmed.

Fisher & Phillips, Grace Y. Horoupian, Christopher M. Ahearn and Raymond W. Duer for Defendants and Appellants.

Cohelan Khoury & Singer, Michael D. Singer, Kristina De La Rosa; Hekmat Law Group and Joseph M. Hekmat for Plaintiff and Respondent.

————————————————

Plaintiff Rubyann Mondragon (Mondragon) sued her former employer, Santa Ana Healthcare & Wellness Centre (Santa Ana), seeking civil penalties under the Labor Code Private Attorneys General Act of 2004 (PAGA; Lab Code, § 2698 et seq.) for various wage, meal break and rest period violations. Santa Ana moved to compel "individual" arbitration under the parties' arbitration agreement, which provides that arbitration shall be the exclusive forum for any dispute, and which prohibits employees from joining or bringing a "representative action" or "acting as a private attorney general or representative of others."

The trial court denied Santa Ana's motion, concluding that it was bound by the California Supreme Court decision in *Iskanian v. CLS Transportation Los Angeles*, LLC (2014) 59 Cal.4th 348 (*Iskanian*), which held that agreements to waive the right to bring PAGA representative actions were unenforceable. It rejected Santa Ana's contention that several intervening United States Supreme Court cases rendered the *Iskanian* rule invalid.

On appeal, Santa Ana renews its assertion that *Iskanian* was wrongly decided and conflicts with controlling United States Supreme Court authority. However, the specific issues before the *Iskanian* court have not been decided by the United States Supreme Court and we too remain bound by *Iskanian*. As such, Mondragon's PAGA waiver remains unenforceable.

We also reject Santa Ana's suggestion that Mondragon's PAGA action can be split off into an individual arbitrable claim. As explained in *Iskanian*, forcing a plaintiff to arbitrate a PAGA claim for penalties as a single-claimant procedure would frustrate the core objectives of the PAGA.

As there is nothing in Mondragon's PAGA-only complaint to compel arbitration, we affirm the trial court's order.

# BACKGROUND

From December 18, 2017 to April 3, 2019, Mondragon was employed by Santa Ana as a nurse and medication technician. Throughout her employment Mondragon worked at Country Villa Plaza, a skilled nursing facility operated by Santa Ana.[1] On December 18, 2017, as a condition of her employment, Mondragon signed an agreement to be bound by an alternative dispute resolution (ADR) policy (the Arbitration Agreement).[2]

## A.    The Arbitration Agreement

The ADR policy states, in relevant part:  "The ADR [p]olicy will be mandatory for ALL DISPUTES ARISING BETWEEN EMPLOYEES, ON THE ONE HAND, AND YOUR EMPLOYER, AND/OR ITS EMPLOYEES AND OFFICERS . . . ON THE OTHER HAND. . . .  [¶]  For parties covered by this [ADR] [p]olicy, alternative dispute resolution, including final and binding arbitration, is the exclusive means for resolving covered disputes . . . .  [¶] . . . [¶]  Covered disputes include any dispute arising out of or related to my employment, the terms and conditions of my employment and/or the termination of your employment . . . ."

The ADR policy also contained a class action waiver:  "I understand and agree this ADR [p]rogram prohibits me from joining or participating in a class action or representative action,

---

[1] Additional defendants in this action include Country Villa Plaza, Rockport Healthcare Support Services, LLC, and Rockport Administrative Services, LLC.  We use the term "Santa Ana" throughout this opinion to collectively refer to all defendants.

[2] The ADR policy, which spans three pages is followed by the "agreement to be bound by [ADR] policy" which spans two pages and repeats many of the same provisions.

acting as a private attorney general or representative of others, or otherwise consolidating a covered claim with the claim of others.  Under this Policy, no arbitrator shall have the authority to order such class action or representative action."

The separate document signed by Mondragon entitled "agreement to be bound by [ADR] policy," reiterated that the "ADR [p]olicy is understood to apply to all disputes relating to my employment, the terms and conditions of my employment," and also reiterated the class/representative action waiver, stating:  "I agree this ADR policy prohibits me from joining or participating in a class action or representative action, acting as a private attorney general or representative of others, or otherwise consolidating a covered claim with the claims of others."

## B. The Complaint for Civil Penalties under the PAGA

### 1. *The Complaint*

On July 31, 2019, after the requisite 65-day notice period,[3] Mondragon filed a "representative PAGA action" against Santa

---

[3] Labor Code section 2699.3 of the PAGA requires a plaintiff to "notify the employer and the Labor and Workforce Development Agency (LWDA) of the specific labor violations alleged, along with the facts and theories supporting the claim." (*Kim v. Reins International California, Inc*. (2020) 9 Cal.5th 73, 81; see Lab. Code, § 2699.3, subd. (a)(1)(A).)  The employee may commence a PAGA action only "[i]f the [LWDA] does not investigate, does not issue a citation, or fails to respond to the notice within 65 days."  (*Kim*, *supra*, at p. 81; see Lab. Code, § 2699.3, subd. (a)(2).)

On May 16, 2019, Mondragon sent the requisite PAGA notice to California's LWDA and Santa Ana, detailing the facts and theories in support of her allegations of Labor Code violations.

Ana, seeking civil penalties on behalf of herself and other aggrieved employees for a variety of wage, meal break, and rest period violations. The complaint pled nine causes of action, each stating that Mondragon was proceeding "as a representative of the general public," and was seeking "to recover any and all penalties for each and every violation, in an amount according to proof, as to those penalties that are otherwise only available in public agency enforcement actions."

In her prayer for relief, Mondragon again stated that she sought "[m]aintenance of this claim as a [r]epresentative [a]ction under the PAGA" and prayed for judgment "only as to those remedies which are permissible . . . pursuant to the PAGA."

### 2. *Background on the PAGA*

The California Legislature enacted the PAGA in 2003 after deciding that lagging labor law enforcement resources made additional private enforcement necessary " 'to achieve maximum compliance with state labor laws.' " (*Iskanian, supra*, 59 Cal.4th at p. 379, quoting *Arias v. Superior Court* (2009) 46 Cal.4th 969, 980.)

"The purpose of the PAGA is not to recover damages or restitution, but to create a means of 'deputizing' citizens as private attorneys general to enforce the Labor Code." (*Brown v. Ralphs Grocery Co.* (2011) 197 Cal.App.4th 489, 501.) Seventy-five percent of any penalties collected by a PAGA representative are distributed to the LWDA, while the remaining 25 percent are distributed to the aggrieved employees. (Lab. Code, § 2699, subd. (i).)

### C. The motion to Compel Individual Arbitration

On July 24, 2020, Santa Ana moved to compel "individual (and not collective or representative) arbitration" arguing that the California Supreme Court's holding in *Iskanian*—that

5

California public policy bars the waiver of PAGA representative claims—was wrongly decided and has since been further undermined by United States Supreme Court precedent defining the broad preemptive scope of the Federal Arbitration Act (FAA; 9 U.S.C. § 1 et seq.).[4]

On August 17, 2020, the court denied the motion at a hearing with the parties, stating "the *Iskanian* case is still the good-to-go authority on this issue." Later that day, the trial court issued a minute order and statement of decision summarizing its ruling.

The trial court pointed out that several intermediate appellate courts have held that the United States Supreme Court's broad view of the FAA's preemptive scope in *Epic Systems Corp. v. Lewis* (2018) 584 U.S. ___ [138 S.Ct. 1612, 200 L.Ed.2d 887] (*Epic Systems*) (one of the cases cited by Santa Ana) did not undermine *Iskanian*'s reasoning or holding. The trial court further noted that the recent PAGA decisions issued by the California Supreme Court have continued to cite to *Iskanian* without any indication that the United States Supreme Court authority has effected any change. The court concluded that it would therefore not enforce the provision of the Arbitration Agreement that prohibits Mondragon "from joining or participating in a . . . representative action" or "acting as a private attorney general or representative of others."

On September 11, 2020, Santa Ana timely appealed the trial court's order.

---

[4] Within its moving papers, Santa Ana stated the court should "dismiss this litigation or, in the alternative, stay the proceedings pending the outcome of [Mondragon's individual] arbitration."

## DISCUSSION

### A. Standard of Review

Where, as here, the trial court's order denying a motion to compel arbitration "rests solely on a decision of law," we review that decision de novo. (*Robertson v. Health Net of California, Inc.* (2005) 132 Cal.App.4th 1419, 1425.)

### B. The FAA

In 1925, the FAA was enacted in response to widespread judicial hostility to arbitration agreements. (*AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333, 339 [131 S.Ct. 1740, 179 L.Ed.2d 742] (*Concepcion*).) Section 2 of the FAA—its primary substantive provision—states in relevant part: "A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (9 U.S.C. § 2.)

The final clause of section 2, the FAA's savings clause, "permits agreements to arbitrate to be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." (*Concepcion*, *supra*, 563 U.S. at p. 339.) Moreover, even if a state-law rule is "generally applicable," it is preempted if it conflicts with the FAA's objectives. (*Concepcion*, *supra*, at p. 341.)

For example, in *Concepcion*, the United States Supreme Court held that the FAA preempted California's rule classifying class action or collective action waivers in consumer contracts of adhesion as unconscionable. (*Concepcion*, *supra*, 563 U.S. at

7

pp. 340-352.) The *Concepcion* court noted that although California's rule did not explicitly discriminate against arbitration (see *id.* at pp. 341-343), it "interfer[ed] with fundamental attributes of arbitration" (*id.* at p. 344), by effectively imposing formal classwide arbitration procedures on the parties against their will. (*Id.* at pp. 345-347.) As such, the rule was preempted by the FAA. (*Concepcion*, *supra*, at p. 352.)

## C.    The *Iskanian* Rule

In *Iskanian*, the plaintiff-employee signed an agreement which provided that " 'any and all claims' " arising out of his employment were to be submitted to binding arbitration before a neutral arbitrator and that neither the employee nor the employer could " 'assert class action or representative action claims against the other.' " (*Iskanian, supra*, 59 Cal.4th at p. 360.) The employee subsequently brought both a class action and a PAGA representative action against his employer. (*Id.* at p. 361.)

The *Iskanian* court first addressed the employee's class action waiver and determined that, under *Concepcion*, the refusal to enforce a class action waiver in an employment arbitration agreement would conflict with the FAA by interfering with the fundamental attributes of arbitration. (*Iskanian*, *supra*, 59 Cal.4th at p. 364.) The court, however, reached a different conclusion on the waiver of the employee's PAGA action.

The court held that a complete ban on PAGA actions was contrary to public policy, and unenforceable as a matter of state law, because it would "disable one of the primary mechanisms for enforcing the Labor Code"—the use of deputized citizen-employees to augment the limited enforcement capability of the LWDA and pursue the civil penalties used to deter such violations. (*Iskanian*, *supra*, 59 Cal.4th at p. 384.) The court

8

held that such a rule did not conflict with the FAA because the FAA was intended to govern "the resolution of *private* disputes, whereas a PAGA action is a dispute between an employer and the state . . . [a]gency." (*Iskanian, supra*, at p. 384.) The court analogized a PAGA claim to a qui tam action and stated that such actions generally fall outside the FAA's purview. (*Iskanian, supra*, at pp. 382, 387.)

Notwithstanding *Iskanian*'s observations that "a PAGA claim lies outside the FAA's coverage" (*Iskanian, supra*, 59 Cal.4th at p. 386), the court left open the possibility that representative PAGA claims might be subject to arbitration if that were the parties' preference: "Although the arbitration agreement can be read as requiring arbitration of individual claims but not of representative PAGA claims, neither party contemplated such a bifurcation. [The plaintiff] has sought to litigate all claims in court, while [the employer] has sought to arbitrate the individual claims while barring the PAGA representative claim altogether. In light of the principles above, neither party can get all that it wants. [The plaintiff] must proceed with bilateral arbitration on his individual damages claims, and *[the employer] must answer the representative PAGA claims in some forum. The arbitration agreement gives us no basis to assume that the parties would prefer to resolve a representative PAGA claim through arbitration.*" (*Iskanian, supra*, at p. 391, italics added.)

## D. The *Iskanian* Rule Remains Binding Authority Regarding Enforceability of PAGA Waivers

Santa Ana claims the United States Supreme Court's interpretation of the FAA preemption clause in three recent cases undermines *Iskanian*'s holding and requires California courts to enforce PAGA representative action waivers. Santa Ana relies on

*Lamps Plus, Inc. v. Varela* (2019) 587 U.S. \_\_\_ [139 S.Ct. 1407, 203 L.Ed.2d 626] (*Lamps Plus*), *Epic Systems*, *supra*, 584 U.S. \_\_\_ [138 S.Ct. 1612], and *Kindred Nursing Centers L.P. v. Clark* (2017) 581 U.S. \_\_\_ [137 S.Ct. 1421, 197 L.Ed.2d 806] (*Kindred Nursing*).)  We are not persuaded.

"On federal questions, intermediate appellate courts in California must follow the decisions of the California Supreme Court, unless the United States Supreme Court has decided the *same* question differently."  (*Correia v. NB Baker Electric, Inc.* (2019) 32 Cal.App.5th at p. 619; see also *Chesapeake & Ohio Ry. v. Martin* (1931) 283 U.S. 209, 221 [51 S.Ct. 453, 75 L.Ed. 983]; *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455; *People v. Whitfield* (1996) 46 Cal.App.4th 947, 955-957.)

In *Epic Systems,* an accountant sued his employer for violations of the federal Fair Labor Standards Act of 1938 (FLSA; 29 U.S.C. § 201 et seq.) and California overtime law.  (*Epic Systems*, *supra*, 584 U.S. at p. \_\_\_ [138 S.Ct. at p. 1620].)  The employee had signed an arbitration agreement that "specified individualized arbitration, with claims 'pertaining to different [e]mployees [to] be heard in separate proceedings.' "  (*Id.* at p. 1621.)  The accountant sought to litigate the state law claim as a class action and the FLSA claim on behalf of a nationwide class under FLSA's collective action procedures.  (*Epic Systems*, *supra*, at p. \_\_\_ [138 S.Ct. at p. 1620].)

In compelling arbitration, the United States Supreme Court reconfirmed *Concepcion*'s holding that the FAA requires enforcement of class action waivers.  It also rejected the employee's argument, as did the *Iskanian* court, that the National Labor Relations Act's guarantee of the right to engage in "concerted activit[y]" (29 U.S.C. § 157) preempted the FAA on

this issue. (*Epic Systems*, *supra*, 584 U.S. at p. ___ [138 S.Ct. at pp. 1623-1630]; *Iskanian*, *supra*, 59 Cal.4th at p. 372.)

Notwithstanding *Epic Systems,* courts considering the continuing vitality of *Iskanian* have unanimously concluded that, in light of the unique nature of a PAGA action—i.e., a suit to punish and deter state labor violations for the benefit of the public—*Epic System*'s interpretation of the FAA's preemptive scope does not defeat *Iskanian*'s holding for purposes of an intermediate appellate court applying the law.[5] (See *Correia v. NB Baker Electric, Inc.*, *supra*, 32 Cal.App.5th at p. 620 [*Epic Systems* did not consider "the unique nature of a PAGA claim" nor "the implications of a complete ban on a state law enforcement action" and thus *Iskanian* remains good law]; cf. *Sakkab v. Luxottica Retail North American, Inc.* (9th Cir. 2015) 803 F.3d 425, 435-436 [upholding *Iskanian* rule against FAA

---

[5] In distinguishing the FLSA claim brought in *Epic Systems*, the *Correia* court pointed to the following passage from *Iskanian*: " 'Our opinion today would not permit a state to circumvent the FAA by, for example, deputizing employee A to bring a suit for the individual damages claims of employees B, C, and D. This pursuit of victim-specific relief . . . would be tantamount to a private class action . . . .' " (*Correia v. NB Baker Electric, Inc.*, *supra*, 32 Cal.App.5th at p. 619, quoting *Iskanian*, *supra*, 59 Cal.4th at p. 387.)

Unlike the PAGA, the FLSA *is* focused on such victim-specific relief. (See 29 U.S.C. § 216 [discussing various compensatory damages available to victim employees under FLSA]; cf. *United States v. Edwards* (4th Cir. 2021) 995 F.3d 342, 346 [observing that additional liquidated damages in amount equal to unpaid wages and overtime compensation available under FLSA "makes perfect sense when considering that the goal is to provide full compensation to employees"].)

preemption by noting that: (1) unlike class action plaintiff, PAGA plaintiff does not vindicate the right to damages for absent employees, but acts as a proxy for the state; and (2) a representative PAGA action does not require any of the formal procedures associated with class actions]; *Rivas v. Coverall N. Am., Inc.* (2021) 842 Fed.Appx. 55, 56 [stating that while *Epic Systems* and *Lamps Plus* reiterated and reapplied rule announced in *Concepcion*—"a case *Sakkab* considered at length" "neither case expanded upon *Concepcion* in such a way as to abrogate *Sakkab*"].)

We agree with these and other appellate courts that have recognized the limited reach of *Epic Systems* in the context of PAGA suits. (See, e.g., *Winns v. Postmates Inc.* (2021) 66 Cal.App.5th 803, 812; *Olson v. Lyft, Inc.* (2020) 56 Cal.App.5th 862, 872; *Provost v. YourMechanic, Inc.* (2020) 55 Cal.App.5th 982, 998; *Collie v. The Icee Co.* (2020) 52 Cal.App.5th 477; *Correia v. NB Baker Electric, Inc.*, *supra*, 32 Cal.App.5th at p. 620.)

The two other United States Supreme Court decisions cited by Santa Ana plainly do not abrogate *Iskanian*. In *Lamps Plus*, an employee who had signed an arbitration agreement sued Lamps Plus in federal court to pursue claims on behalf of a putative class of employees whose tax information had been compromised as a result of a hacker-related breach. (*Lamps Plus*, *supra*, 587 U.S. at p. ___ [139 S.Ct. at pp. 1412-1413].) Although the arbitration agreement was ambiguous as to whether the parties had agreed to class arbitration, the Ninth Circuit construed the agreement against Lamps Plus (the drafter of the agreement) and approved a classwide arbitration order. (*Id.* at p. ___ [139 S.Ct. at pp. 1413-1414.) The high court reversed, holding the FAA preempted California's contra proferentem rule (requiring agreements be held against the

12

drafter) when the rule is used "to impose class arbitration in the absence of the parties' consent." (*Lamps Plus*, *supra*, at p. ___ [139 S.Ct. at pp. 1415, 1418, fn. omitted].)

In *Kindred Nursing,* the United States Supreme Court rejected the argument that an arbitration agreement between a nursing facility and its resident, which had been entered by the resident's attorney-in-fact, was unenforceable. (*Kindred Nursing*, *supra*, 581 U.S. at p. ___ [137 S.Ct. at pp. 1425-1426].) The high court concluded that a judicially-created state rule (that a power of attorney could not entitle a representative to waive the right to a jury trial absent a "clear statement" specifically granting such authority) violated the FAA. (*Kindred Nursing*, *supra*, at pp. 1425-1427.)

We fail to discern how these cases compel us to abandon our high court's holding in *Iskanian*. The central concern in *Iskanian* was whether an outright waiver of representative PAGA actions would defeat the state's augmented enforcement of its labor laws. In contrast, *Kindred Nursing* focused on a state rule that effectively singled out arbitration agreements for disfavored treatment. Similarly, *Lamps Plus* rejected imposing a state rule of contract interpretation that would have forced class-wide arbitration of private party claims absent the parties' consent to such procedures.

Neither case decided or considered whether a worker may waive the right to bring a representative action on behalf of a state government *in any forum*. Neither case mentions PAGA or similar laws in other states. Accordingly, under the doctrine of stare decisis, we are bound to follow our Supreme Court's decision in *Iskanian*. (See *Auto Equity Sales, Inc. v. Superior Court*, *supra*, 57 Cal.2d at pp. 455-456.)

13

**E.**     **Mondragon May Not Be Compelled to Arbitrate Her PAGA Action on an Individual Basis**

Santa Ana requests an order compelling Mondragon to submit her PAGA claims "to binding individual (not collective or representative) arbitration." Under *Iskanian,* however, such an order cannot issue.

In *Iskanian*, the court noted there existed a split in authority regarding whether an employee could file an individual claim under the PAGA. (*Iskanian*, *supra*, 59 Cal.4th at p. 383.) The court went on to explain that, even assuming the PAGA permitted an individual claim for penalties, "a single-claimant arbitration under the PAGA for individual penalties will not result in the penalties contemplated under the PAGA to punish and deter employer practices that violate the rights of numerous employees under the Labor Code." (*Iskanian, supra*, 59 Cal.4th at p. 384.) Because compelling a single-claimant procedure would frustrate the core objectives of the PAGA, the court held that the right to bring a representative PAGA case could neither be waived nor bifurcated and compelled to arbitration on an "individual" basis. (*Id*. at p. 384.)

Mondragon's complaint is expressly designated as a "PAGA representative action" and it alleges that, as "a representative of the general public," she is seeking penalties on behalf of all aggrieved employees. Thus, like the plaintiff in *Iskanian,* Mondragon cannot be compelled to arbitrate her PAGA action on an individual basis. (*Iskanian*, *supra*, 59 Cal.4th at pp. 384, 391.)

14

## DISPOSITION

The order denying the motion to compel arbitration is affirmed.  Mondragon shall recover her costs on appeal.
NOT TO BE PUBLISHED


CRANDALL, J.*


We concur:



ROTHSCHILD, P. J.



BENDIX, J.

---

* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.