Filed 10/19/23  Reynante v. Home Depot U.S.A. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| CORWIN REYNANTE, | D082218 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. CVRI2101570) |
| HOME DEPOT U.S.A., INC. et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Riverside, Craig G. Riemer, Judge.  Reversed and remanded.

Ogletree, Deakins, Nash, Smoak & Stewart, Evan R. Moses, Christopher W. Decker, and Kathleen J. Choi for Defendants and Appellants Home Depot U.S.A., Inc. and The Home Depot, Inc.

Fisher & Phillips, Kristen Nesbit, and Shaun J. Voigt for Defendant and Appellant Sunrun, Inc.

The Graves Firm, Allen Graves, and Jacqueline Treu for Plaintiff and Respondent Corwin Reynante.

# I

# INTRODUCTION

Sunrun, Inc. (Sunrun), Home Depot U.S.A., Inc., and The Home Depot, Inc. (together with Home Depot U.S.A., Home Depot) appeal an order denying their motion to compel arbitration of Private Attorneys General Act of 2004 (Lab. Code, § 2698 et seq.; PAGA) claims filed against them by putative employee Corwin Reynante. The trial court denied the motion because the parties' arbitration agreement has a class and representative action waiver requiring Reynante to arbitrate his employment-related claims with the defendants strictly on an individual basis.

At the time the trial court denied the motion to compel arbitration, California state law prohibited predispute contractual waivers of an employee's right to bring a PAGA claim on behalf of the State in any forum. (*Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 382–383 (*Iskanian*).) It also prohibited predispute agreements to split PAGA claims into bifurcated proceedings—for example, agreements to arbitrate Labor Code violations personally suffered by the plaintiff (so-called individual claims) and to litigate Labor Code violations arising out of events involving other employees (so-called representative claims) in court. (*Id.* at p. 383.)

After the trial court denied the motion to compel arbitration, the United States Supreme Court issued *Viking River Cruises, Inc. v. Moriana* (2022) 596 U.S. __, 142 S.Ct. 1906 (*Viking River*). *Viking River* upheld the state law rule prohibiting categorical PAGA waivers, but held the Federal Arbitration Act (9 U.S.C. § 1, et seq.; FAA) preempts the state law rule banning the splitting of PAGA claims into separate fora. In this appeal, we must decide whether the trial court's stated basis for denying the motion to compel arbitration survives in light of *Viking River*. We conclude it does not.

Further, Reynante has not supplied us with a sufficient justification to affirm the denial order on other grounds.

However, there are factual disagreements concerning the circumstances under which the parties executed the arbitration agreement and the trial court did not render findings on these disputed issues of contract formation. Thus, we reverse the order denying the motion to compel arbitration and remand the matter so the trial court may determine, in the first instance, whether the parties entered into a valid arbitration agreement. If the court finds the parties entered into an enforceable agreement to arbitrate, it must compel arbitration of Reynante's individual PAGA claims consistent with the opinions expressed herein.

## II

## BACKGROUND

Sunrun is a company that provides solar panel installation and maintenance services to residential homeowners. In December 2019, Sunrun hired Reynante as a retail sales associate. In this capacity, Reynante sold Sunrun products and services at Home Depot home improvement retail stores in Hemet and Beaumont.

When Reynante began working for Sunrun, he was presented with an electronic employment and arbitration contract (hereafter, the arbitration agreement). According to Sunrun, Reynante scrolled through the arbitration agreement and clicked a checkbox next to a signature block at the bottom of the contract. The signature block was located beneath language stating the employee read and understood the contract and had an opportunity to discuss it with legal counsel.

The arbitration agreement requires Reynante and Sunrun to arbitrate "any and all" disputes or claims arising out of, relating to, or resulting from

3

Reynante's employment with Sunrun. It has a class and representative action waiver that states, "We expressly intend and agree that, to the maximum extent permitted by law, (1) class, collective, and representative action procedures shall not be invoked, nor will they apply, in any arbitration pursuant to this agreement; (2) I will not assert class, collective, or representative action claims against [Sunrun] in arbitration or any other forum; and (3) I shall only submit my own individual claims in arbitration and will not seek to represent the interests of any other person." Thereafter, it states, "Notwithstanding the foregoing, I understand that I may bring a proceeding as a Private Attorney General as permitted by law ...."[1]

The arbitration agreement is subject to a severability clause that reads, "If any provision of this Agreement is held to be invalid or unenforceable for any reason, the other provisions of this Agreement will remain enforceable and the invalid or unenforceable provision will be deemed modified so that it is valid and enforceable to the maximum extent permitted by law."

In 2021, Reynante filed a class and representative action complaint against Sunrun and Home Depot in the Superior Court of California, County of Riverside. He alleged the defendants failed to notify him and other employees that workers at their jobsites tested positive for COVID-19. In the operative third amended complaint, he omitted the class claims and asserted two PAGA claims against the defendants. The claims sought civil penalties for violations of Labor Code section 6409.6 and a Cal-OSHA regulation (former Cal. Code Regs., tit. 8, § 3205, subd. (c)(3)(B)(3)) requiring employers to give written notice to employees of potential COVID-19 exposure and to

---

[1]  The contract language quoted in this paragraph is capitalized and bolded in the arbitration agreement. The capitalization and bolding in the arbitration agreement have been omitted here and throughout the remainder of this opinion.

implement written procedures mandating that notice be given to potentially exposed employees.

Sunrun moved to compel individual arbitration of the PAGA claims and to strike the claims to the extent they were representative in nature. It acknowledged that, under *Iskanian, supra*, 59 Cal.4th 348, state law prohibited the enforcement of a predispute waiver of an employee's right to bring a PAGA claim as a proxy of the State. However, Sunrun predicted the *Iskanian* rule banning categorial PAGA waivers would be overruled or limited in *Viking River*, a case that was pending before the United States Supreme Court. Sunrun asked the court to dismiss or stay the case pending the completion of individual arbitration or, at minimum, to stay the action until a decision in *Viking River*. Home Depot joined Sunrun's motion.[2]

Together with its motion, Sunrun filed a declaration from its Senior Director of Talent Acquisition, Megan Lessard. She averred that when Sunrun hired Reynante, new hires were required to create an account with a third-party recruiting company, "scroll through" an electronic version of the arbitration contract (which was "opened separately in a window with a scroll bar"), and click on a checkbox next to a signature block, which generated the employee's electronic signature and filled in the contract execution date. She said that Sunrun's records showed Reynante electronically signed the

---

[2] Home Depot argued it was entitled to enforce the arbitration agreement, despite being a nonsignatory to the agreement, because: (1) Reynante alleged in the operative complaint that Home Depot was an agent of signatory Sunrun; (2) Reynante's allegations against Home Depot were intimately founded in, and intertwined with, the underlying employment and arbitration agreement, which estopped Reynante from avoiding his obligation to arbitrate with Home Depot; and (3) Home Depot was a third-party beneficiary of the arbitration agreement. Reynante has not challenged these arguments on appeal or, as far as we can discern from the record, in the trial court.

arbitration agreement on December 16, 2019. The Lessard declaration had two exhibits attached to it: (1) an unsigned copy of the arbitration agreement; and (2) a printout of Reynante's personnel file, which allegedly reflected the date and time his signed arbitration agreement was transmitted to Sunrun.

Reynante opposed the motion to compel individual arbitration of his PAGA claims on several grounds. Of relevance here, he asserted Sunrun failed to establish the existence of a valid arbitration agreement. In particular, he argued Lessard was "simply wrong" in claiming he was required to electronically scroll through the arbitration agreement before he clicked a checkbox next to its signature block. He asserted he did not manifest his assent to the arbitration agreement merely by clicking the checkbox because the agreement contained no "language indicating that Plaintiff *agreed* to anything." (Italics added.) Further, he requested an opportunity to propound discovery on the defendants concerning whether the parties formed a valid agreement to arbitrate. In addition to raising these contract formation arguments, Reynante contended the *Iskanian* anti-waiver rule prohibited enforcement of any predispute PAGA waiver.

Sunrun filed a reply in support of its motion. It argued Reynante accepted the arbitration agreement by affixing his electronic signature at the bottom of the contract, which in its opening paragraph said, "I agree to the terms of this Employee Confidentiality, Inventions Assignment and Arbitration Agreement (the 'Agreement')." Sunrun also reiterated its assertion that *Viking River* would soon dictate whether courts may enforce predispute waivers of an employee's right to bring a PAGA claim.

The court denied the motion to compel arbitration in a brief order that cited *Iskanian, supra*, 59 Cal.4th 348, but undertook no further analysis and

6

made no factual findings.  It also denied Sunrun's request for a stay.  Three weeks later, the United States Supreme Court issued its *Viking River* decision, which partially abrogated *Iskanian*, as discussed below.[3]

### III

### DISCUSSION

A. *The Denial Order Cannot be Affirmed Based on the PAGA Waiver*

    1. *PAGA*

"The Legislature enacted PAGA almost two decades ago in response to widespread violations of the Labor Code and significant underenforcement of those laws.  [Citations.]  Before PAGA's enactment, tools for enforcing the Labor Code were limited.  Some statutes allowed employees to sue their employers for damages resulting from Labor Code violations such as unpaid wages.  [Citations.]  Other Labor Code violations were punishable only as criminal misdemeanors, which local prosecutors tended not to prioritize.  [Citation.]  Additionally, several statutes provided civil penalties for Labor Code violations, but only state labor law enforcement agencies could bring an action for civil penalties and those agencies lacked sufficient enforcement resources."  (*Adolph v. Uber Technologies, Inc.* (2023) 14 Cal.5th 1104, 1116 (*Adolph*).)

"To address these shortcomings, the Legislature enacted PAGA to create new civil penalties for various Labor Code violations and ' "to allow aggrieved employees, acting as private attorneys general, to recover [those] penalties." ' [Citation.]  An employee who brings a PAGA action to recover civil penalties acts ' "as the proxy or agent" ' of the state.  [Citations.]  'PAGA

---

3    In a separate noticed motion, the defendants asked the court to stay the litigation pending a decision in *Viking River*.  The court denied the stay motion in an order that is not challenged in this appeal.

7

is designed primarily to benefit the general public, not the party bringing the action.' [Citation.] Penalties recovered are dedicated largely 'to public use ... instead of being awarded entirely to a private plaintiff.' " (*Adolph*, *supra*, 14 Cal.5th at p. 1116.)

"To have standing to bring a PAGA action, a plaintiff must be an 'aggrieved employee,' which the statute defines as 'any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed.' [Citation.] An aggrieved employee becomes deputized to prosecute Labor Code violations once he or she has complied with PAGA's notice requirements. [Citation.] Before filing suit, the aggrieved employee 'must notify the employer and the [Labor and Workforce Development Agency (LWDA)] of the specific labor violations alleged, along with the facts and theories supporting the claim.' [Citations.] 'If the agency does not investigate, does not issue a citation, or fails to respond to the notice within 65 days, the employee may sue.' [Citations.] 'The notice requirement allows the relevant state agency "to decide whether to allocate scarce resources to an investigation" ' [citation] or instead to deputize the aggrieved employee to pursue sanctions on the state's behalf. Once deputized, the aggrieved employee has authority to 'seek any civil penalties the state can.' " (*Adolph*, *supra*, 14 Cal.5th at pp. 1116–1117.) Because the aggrieved employee may seek any civil penalties the State can, the employee "may seek penalties not only for the Labor Code violation that affected him or her, but also for different violations that affected other employees." (*Huff v. Securitas Security Services USA, Inc.* (2018) 23 Cal.App.5th 745, 750.)

2. *Iskanian*

In *Iskanian*, the California Supreme Court considered the viability of a predispute waiver of an employee's right to bring a PAGA action on behalf of the State. The *Iskanian* court concluded a categorical waiver of the right to

8

bring a PAGA action in any forum violates state law. (*Iskanian, supra*, 59 Cal.4th at pp. 382–383.) According to *Iskanian*, a blanket PAGA waiver "disable[s] one of the primary mechanisms for enforcing the Labor Code" and "harm[s] the state's interests in ... receiving the proceeds of civil penalties used to deter violations," and thus violates public policy.[4] (*Id.* at p. 383.)

In the course of reaching this conclusion, the *Iskanian* court rejected a claim from the defendant-employer that the parties' agreement should be enforced because it "prohibits only representative claims, not individual PAGA claims for Labor Code violations that an employee suffered." (*Iskanian, supra*, 59 Cal.4th at p. 383.) As the *Iskanian* court explained, "whether or not an individual claim is permissible under the PAGA, a prohibition of *representative* claims frustrates the PAGA's objectives." (*Id.* at p. 384.) In the wake of *Iskanian*, California courts, relying in part on the *Iskanian* court's analysis, determined that state law prohibits an employer from "forc[ing] an employee to split a PAGA claim into 'individual' and 'representative' components, with each being litigated in a different forum." (*Perez v. U-Haul Co. of California* (2016) 3 Cal.App.5th 408, 421.)

3. *Viking River*

In *Viking River*, issued shortly after the trial court denied the defendants' motion to compel arbitration, the United States Supreme Court

---

4    In particular, the *Iskanian* court concluded a waiver of an employee's right to assert a PAGA claim violates Civil Code sections 1668 and 3513. (*Iskanian, supra*, 59 Cal.4th at pp. 382–383.) Section 1668 provides, "All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law." Section 3513 states, "Any one may waive the advantage of a law intended solely for his benefit. But a law established for a public reason cannot be contravened by a private agreement."

addressed the issue of whether the FAA preempts the rules of state law that were articulated and applied in the *Iskanian* decision and its progeny.[5]

As the *Viking River* court explained, PAGA claims are " 'representative' in two distinct ways .... [¶] In the first sense, PAGA actions are 'representative' in that they are brought by employees acting as representatives—that is, as agents or proxies—of the State." (*Viking River, supra*, 596 U.S. at p. __ [142 S.Ct. at p. 1916].) Viewed through this lens," ' "*every* PAGA action is ... representative" ' and '[t]here is no individual component to a PAGA action,' [citations], because every PAGA claim is asserted in a representative capacity." (*Ibid*.) However, PAGA claims can also be considered " 'representative' when they are predicated on code violations sustained by other employees." (*Ibid*.) Such claims are distinguishable from "individual" PAGA claims, which "refer to claims based on code violations suffered by the plaintiff." (*Ibid*.) In *Viking River*, the court used the terms "representative" and "individual" in the second sense and, as noted at the outset of our opinion, we have endeavored to do the same here.

According to *Viking River*, the *Iskanian* court articulated two rules of law relating to PAGA. "*Iskanian*'s principal rule prohibits waivers of 'representative' PAGA claims in the first sense. That is, it prevents parties from waiving *representative standing* to bring PAGA claims in a judicial or arbitral forum." (*Viking River, supra*, 596 U.S. at p. __ [142 S.Ct. at p. 1916].) The *Viking River* court concluded the FAA does not preempt this rule, which remains good law today. (*Id.* at pp. __–__ [142 S.Ct. at pp. 1916–1917]; *Adolph, supra*, 14 Cal.5th at p. 1117 ["In *Iskanian*, we held that a

---

5    The FAA provides that a "written provision in ... a contract ... to settle by arbitration a controversy thereafter arising ... shall be valid, irrevocable, and enforceable save upon such grounds as exist at law or in equity for the revocation of any contract ...." (9 U.S.C., § 2.)

predispute categorical waiver of the right to bring a PAGA action is unenforceable [citation]—a rule that *Viking River* left undisturbed"].)

*Iskanian* "also adopted a secondary rule that invalidates agreements to separately arbitrate or litigate 'individual PAGA claims for Labor Code violations that an employee suffered,' on the theory that resolving victim-specific claims in separate arbitrations does not serve the deterrent purpose of PAGA." (*Viking River, supra*, 596 U.S. at p. __ [142 S.Ct. at pp. 1916–1917].) *Viking River* held that *Iskanian*'s anti-splitting rule, unlike its prohibition on predispute PAGA waivers, violates the FAA. It "unduly circumscribes the freedom of parties to determine 'the issues subject to arbitration' and 'the rules by which they will arbitrate,' [citation], and does so in a way that violates the fundamental principle that 'arbitration is a matter of consent,' [citation]." (*Id.* at p. __ [142 S.Ct. at p. 1923].) "If the parties agree to arbitrate 'individual' PAGA claims based on personally sustained violations, [the anti-splitting rule] allows the aggrieved employee to abrogate that agreement after the fact and demand either judicial proceedings or an arbitral proceeding that exceeds the scope jointly intended by the parties. The only way for parties to agree to arbitrate *one* of an employee's PAGA claims is to also 'agree' to arbitrate *all other* PAGA claims in the same arbitral proceeding." (*Id.* at p. __ [142 S.Ct. at p. 1924].)

According to the *Viking River* court, *Iskanian*'s anti-splitting rule effectively "coerce[s] parties into withholding PAGA claims from arbitration." (*Viking River, supra*, 596 U.S. at p. __ [142 S.Ct. at p. 1924].) It does so because representative PAGA claims permit "plaintiffs to unite a massive number of claims in a single-package suit." (*Ibid*.) However, " '[a]rbitration is poorly suited to the higher stakes' of massive-scale disputes of this kind," since it lacks the type of " 'multilayered review' " that is critical for error

11

correction, while "entail[ing] the same 'risk of "in terrorem" settlements that class actions entail.' " (*Ibid*.) "As a result, *Iskanian*'s indivisibility rule effectively coerces parties to opt for a judicial forum rather than 'forgo[ing] the procedural rigor and appellate review of the courts in order to realize the benefits of private dispute resolution.' " (*Ibid*.)

After reaching these conclusions, the *Viking River* court turned to the facts of the case before it. The case involved an arbitration agreement requiring an employee (Moriana) to arbitrate virtually all disputes arising out of her employment with her employer (Viking). (*Viking River, supra*, 596 U.S. at p. __ [142 S.Ct. at p. 1911].) The arbitration agreement included a class and representative action waiver prohibiting the parties from bringing any dispute as a class, collective, or representative PAGA claim, and it stated that any class, collective, representative, or PAGA action would presumptively be litigated in court if the waiver was found invalid. (*Ibid*.) It also included a severability clause providing that, "if any 'portion' of the waiver remained valid, it would be 'enforced in arbitration.' " (*Id*. at p. __ [142 S.Ct. at p. 1916].)

The *Viking River* court concluded the representative action waiver "was invalid if construed as a wholesale waiver of PAGA claims," under *Iskanian*'s principal rule. (*Viking River, supra*, 596 U.S. at p. __ [142 S.Ct. at p. 1924].) But, in light of the severability clause, "Viking was entitled to enforce the agreement insofar as it mandated arbitration of Moriana's individual PAGA claim." (*Id*. at p. __ [142 S.Ct. at p. 1925].) Viking was permitted to enforce the arbitration agreement in this manner—even though it meant Moriana's PAGA claim would be divided into individual and non-individual components in separate fora—because the FAA preempted *Iskanian*'s anti-splitting rule. (*Id*. at p. __ [142 S.Ct. at p. 1917].)

12

4. *Application*

Applying these principles to the arbitration agreement at hand, we conclude the trial court erred insofar as it invalidated the arbitration agreement in its entirety, rather than severing the invalid portion of the class and representative action waiver that prohibited Reynante from asserting a representative PAGA claim as a proxy of the State in any forum.

The arbitration agreement requires the parties to resolve "any and all" claims or disputes arising out of or relating to Reynante's employment with Sunrun, subject to a class and representative action waiver that contains three clauses. The first clause bans "representative action procedures" in arbitration, while the second clause prohibits "representative action claims" in any forum. Read in the context of the comprehensive provision channeling "any and all" employment-related disputes into arbitration, these clauses violate *Iskanian*'s principal rule by forbidding employees from pursuing "representative" claims for violations suffered by other employees in arbitration or any other forum. The third clause in the waiver compels the employee to arbitrate his or her "individual claims" and prohibits the employee from representing the interests of "any other person" in arbitration.

The question we must decide is whether the invalid clauses in the waiver may be severed from the remainder of the arbitration agreement. We conclude they may be severed. Like the arbitration agreement in *Viking River*, the arbitration agreement at the heart of this appeal is subject to a severability clause requiring the enforcement of any valid portion of the agreement notwithstanding the presence of an invalid or unenforceable provision. In particular, it is subject to a severability clause that states, "If any provision of this Agreement is held to be invalid or unenforceable for any reason, the other provisions of this Agreement will remain enforceable and

13

the invalid or unenforceable provision will be deemed modified so that it is valid and enforceable to the maximum extent permitted by law."

Under *Viking River*, the portion of the waiver that violates *Iskanian*'s principal rule must be severed and the remainder of the arbitration agreement enforced, including the portion of the waiver requiring Reynante to arbitrate his individual PAGA claims. (*Viking River, supra*, 596 U.S. at p. __ [142 S.Ct. at p. 1925] ["Based on [the severability] clause, Viking was entitled to enforce the agreement insofar as it mandated arbitration of Moriana's individual PAGA claim."]; see *Nickson v. Shemran, Inc.* (2023) 90 Cal.App.5th 121, 130 [severing waiver of employee's right to assert representative PAGA action from remainder of arbitration agreement]; *Gregg v. Uber Technologies, Inc.* (2023) 89 Cal.App.5th 786, 796–801 [severing arbitration provision prohibiting driver from asserting PAGA claims for violations suffered by other drivers, but enforcing agreement to arbitrate driver's individual PAGA claim] (*Gregg*); *Galarsa v. Dolgen California, LLC* (2023) 88 Cal.App.5th 639, 650 ["*Viking River* demonstrates that an invalid waiver of representative claims may be severed from the remainder of an arbitration agreement."].)

Our opinion thus far presupposes that the arbitration agreement and the class and representative action waiver therein apply to PAGA claims like those Reynante asserted in the operative third amended complaint. However, in his appellate brief, Reynante argues the arbitration agreement "exempts" PAGA claims. In support of this assertion, he relies on the sentence that appears after the class and representative action waiver. That sentence states, "Notwithstanding the foregoing, I understand that I may bring a proceeding as a Private Attorney General as permitted by law."

14

According to Reynante, this sentence unambiguously allows an employee like himself to litigate a representative PAGA claim for Labor Code violations suffered by other employees in court. The defendants assert the sentence after the class and representative action waiver can, at the very least, reasonably be construed to mean that an employee may arbitrate an individual PAGA claim for violations he or she personally suffered, despite the class and representative action waiver.

" ' "Under California law, ordinary rules of contract interpretation apply to arbitration agreements.... ' "The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties...." ' " ' " (*Western Bagel Co., Inc. v. Superior Court* (2021) 66 Cal.App.5th 649, 662 (*Western Bagel*).) "Under California law, the first step in analyzing the meaning of a contract is to determine whether the language is ambiguous— that is, reasonably susceptible to more than one meaning." (*Eminence Healthcare, Inc. v. Centuri Health Ventures, LLC* (2022) 74 Cal.App.5th 869, 879.)

Applying principles of contract interpretation, we conclude the contractual language on which Reynante relies does not clearly "exempt" PAGA claims from the scope of the arbitration agreement. "The word 'proceeding' can take on 'different meanings in different contexts,' " (*Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 754), but it is not necessarily synonymous with a "lawsuit in court," and it is capacious enough to encompass arbitration. (See Evid. Code, § 901 [" 'Proceeding' means any action, hearing, investigation, inquest, or inquiry ... conducted by a[n] ... arbitrator"].) Further, the language says nothing about the type of claims an employee may assert in such a "proceeding" while serving as a private attorney general—e.g., representative PAGA claims,

15

individual PAGA claims, or both. (See *Piplack v. In-N-Out Burgers* (2023) 88 Cal.App.5th 1281, 1288 (*Piplack*) ["every PAGA action is properly understood as a combination of two claims: an 'individual' claim, arising from the Labor Code violations suffered by the plaintiff or plaintiffs themselves, and a 'representative' claim, arising from violations suffered by other employees"].)

Given this lack of specificity, it is, at the very least, reasonable to conclude the parties intended the contractual language at issue to mean that an employee may pursue an individual PAGA claim in arbitration, despite the preceding waiver of the employee's right to bring a representative action, and consistent with the third clause of the waiver permitting the employee to submit his "individual claims in arbitration." That reading is harmonious with the arbitration agreement's expansive requirement that the parties must arbitrate "any and all" claims or disputes arising out of Reynante's employment with Sunrun. By contrast, Reynante's interpretation of the contractual language at issue stands in tension with this broad mandate. "The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." (Civ. Code, § 1641; see *Gregg, supra*, 89 Cal.App.5th at pp. 798–800 [rejecting driver's claim he could litigate individual PAGA claim under provision stating, " 'any representative action brought under PAGA on behalf of others must be litigated in a civil court,' " because that claim "overlook[ed]" the arbitration agreement's mandate that the driver must arbitrate all " 'disputes arising out of or related to [his] relationship with [Uber]' "].)

In short, Reynante wishes us to interpret the arbitration agreement as if it stated, "Notwithstanding the foregoing, I understand that I may bring a proceeding *in court* as a Private Attorney General *in order to assert representative PAGA claims for Labor Code violations experienced by other*

16

*employees.*" However, it does not contain this language or anything similar to it. "The court does not have the power to create for the parties a contract which they did not make, and it cannot insert in the contract language which one of the parties now wishes were there." (*Levi Strauss & Co. v. Aetna Casualty & Surety Co.* (1986) 184 Cal.App.3d 1479, 1486.)

Further, to the extent the contractual language is ambiguous, the ambiguity concerns the scope of the arbitration agreement. It is well-established that, "in applying general state-law principles of contract interpretation to the interpretation of an arbitration agreement within the scope of the Act, [citation], due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." (*Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University* (1989) 489 U.S. 468, 475–476; *Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.* (1983) 460 U.S. 1, 24–25 ["The [FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."]; see also *Sandquist v. Lebo Automotive, Inc.* (2016) 1 Cal.5th 233, 247 ["under state law as under federal law, when the allocation of a matter to arbitration or the courts is uncertain, we resolve all doubts in favor of arbitration"]; *Cruise v. Kroger Co.* (2015) 233 Cal.App.4th 390, 397 [" ' "In California, the general rule is that arbitration should be upheld unless it can be said with assurance that an arbitration clause is not susceptible to an

interpretation covering the asserted dispute." ' "].)  These principles require us to construe the arbitration agreement to encompass PAGA claims.[6]

In sum, we interpret the parties' arbitration agreement—which broadly requires arbitration of "any and all" claims and disputes arising out of or relating to Reynante's employment with Sunrun—as encompassing the PAGA claims Reynante asserts in the operative third amended complaint. The agreement has a waiver that precludes Reynante from asserting representative PAGA claims in arbitration or in any other forum—a waiver that runs afoul of *Iskanian*'s principal holding, which remains good law. However, in light of the severability clause applicable to the arbitration agreement, the invalid waiver may be severed from the agreement and Reynante's individual PAGA claim ought to be compelled into arbitration.

---

[6] Reynante urges us to apply the interpretive rule of contra proferentem ("against the drafter") to construe any ambiguity against the defendants because one of the defendants, Sunrun, drafted the arbitration agreement. We decline this invitation.  "The rule applies 'only as a last resort' when the meaning of a provision remains ambiguous after exhausting the ordinary methods of interpretation."  (*Lamps Plus, Inc. v. Varela* (2019) 139 S.Ct. 1407, 1417 (*Lamps Plus*).)  It provides a tie-breaking "default rule based on public policy considerations; 'it can scarcely be said to be designed to ascertain the meanings attached by the parties.' "  (*Ibid.*)

We need not apply the tiebreaker here, as "the FAA provides the default rule for resolving ... [any] ambiguities in [the] arbitration agreement[]"—"ambiguities about the scope of an arbitration agreement must be resolved in favor of arbitration."  (*Lamps Plus, supra*, 139 S.Ct. at p. 1418 [FAA preempted use of the contra proferentem to construe ambiguous language in arbitration agreement to permit class arbitration]; see also *Western Bagel, supra*, 66 Cal.App.5th at pp. 654–655, 663–666 [declining to apply contra proferentem to construe ambiguity in arbitration agreement and instead "employ[ing] the FAA's default rule that any ambiguities about the scope of an arbitration agreement must be resolved in favor of arbitration"].)

B. *The Denial Order Cannot be Affirmed for Alternative Reasons*

   1. *The Arbitration Agreement Compels Arbitration of Any and All Disputes Arising out of the Parties' Employment Relationship*

In addition to the arguments just discussed, which mainly concern the class and representative action waiver, Reynante claims the court properly denied the motion to compel arbitration because the arbitration agreement requires the parties to arbitrate disputes *between themselves* arising out of the parties' employment relationship, but a PAGA action is not a dispute between an employer and an employee. Rather, it is a dispute between an employer and an absent principal—the State. (*Arias v. Superior Court* (2009) 46 Cal.4th 969, 986 [a plaintiff brings a PAGA claim "as the proxy or agent of the state's labor law enforcement agencies"].) We are not convinced.

As Reynante notes, the arbitration agreement defines the scope of arbitrable matters to include employment-related disputes between the employer and the employee ("The Company and I agree to arbitrate before a neutral arbitrator any and all controversies, claims, or disputes between us ... arising out of, relating to, or resulting from my employment or relationship with the company or the termination of my employment or relationship with the company ...."). But its reach is not so limited. On the contrary, it elsewhere requires the parties to submit to arbitration *any and all disputes* arising out of or relating to Reynante's employment with Sunrun, without specifying the parties to whom such disputes "belong," or otherwise limiting arbitration to disputes between Reynante and Sunrun. The agreement states, "Disputes that we agree to arbitrate, and for which we thereby agree to waive any right to a trial by jury, include *any and all* existing or future disputes or claims arising out of or relating to [Reynante's] recruitment, employment, or separation from employment ...." (Italics added.)

19

As our earlier analysis suggests, a PAGA action is a dispute arising out of an employee's relationship with his or her employer. (*Viking River, supra*, 596 U.S. at p. __, fn. 4 [142 S.Ct. at p. 1919, fn. 4].) "The contractual relationship between the parties is a but-for cause of any justiciable legal controversy between the parties under PAGA, and 'arising out of' language normally refers to a causal relationship." (*Ibid.*; see *Khalatian v. Prime Time Shuttle, Inc.* (2015) 237 Cal.App.4th 651, 659 ["The language 'arising out of or relating to' as used in the parties' arbitration provision is generally considered a broad provision."].) That is certainly true here, as Reynante maintains that he is an aggrieved employee with standing to pursue his claims because, by virtue of his employment by the defendants, he suffered violations of a statute and an executive regulation requiring the defendants to give him notice of possible COVID-19 exposure.

Because the arbitration agreement broadly requires the parties to submit "any and all" disputes arising out of or relating to Reynante's employment, and the PAGA claims asserted in the operative complaint fall within this scope of claims, we reject Reynante's argument that we should affirm the denial order based solely on the fact Reynante will be acting as a state proxy while prosecuting his PAGA claims against the defendants.

2. *Factual Disputes Exist Concerning Contract Formation*

Reynante also urges us to affirm the denial order on grounds that the parties never formed an agreement to arbitrate their employment-related disputes. The defendants argue the matter should be remanded because the issue of contract formation presents disputed factual issues that must be resolved in the first instance by the trial court, which did not render any findings about whether the parties entered into an agreement to arbitrate. We agree with the defendants that remand is the proper course.

20

" 'The right to arbitration depends upon contract; a petition to compel arbitration is simply a suit in equity seeking specific performance of that contract.' " (*City of Vista v. Sutro & Co.* (1997) 52 Cal.App.4th 401, 407.) "[A] court, before granting a petition to compel arbitration, *must* determine the factual issue of 'the existence or validity of the arbitration agreement.' " (*Toal v. Tardif* (2009) 178 Cal.App.4th 1208, 1219.) "Whether the parties formed a valid agreement to arbitrate is determined under general California contract law." (*Vista*, at p. 407.) " 'The petitioner [seeking arbitration] bears the burden of proving the existence of a valid arbitration agreement by a preponderance of the evidence, while a party opposing the petition bears the burden of proving by a preponderance of the evidence any fact necessary to its defense. [Citation.] The trial court sits as the trier of fact, weighing all the affidavits, declarations, and other documentary evidence, and any oral testimony the court may receive at its discretion, to reach a final determination.' " (*Ramos v. Westlake Services LLC* (2015) 242 Cal.App.4th 674, 685–686; see *Vista*, at p. 407 ["when ruling on a petition to compel arbitration, the superior court may consider evidence on factual issues such as contract formation"].)

Here, the parties provide conflicting accounts of the circumstances under which the arbitration agreement was presented to Reynante. Relying on the declaration submitted by Lessard, Sunrun's Senior Director of Talent Acquisition, the defendants claim Reynante was required to click open an electronic version of the arbitration agreement, physically scroll to the bottom of the contract, and click a checkbox field next to a signature block, which generated an electronic signature and date on the contract.

Reynante disputes the defendants' description of "the way in which the arbitration agreement was presented to [him]." This claim echoes fact-laden

21

arguments he made in the proceedings below, where he contended Lessard was "simply wrong" when she stated he was required to physically scroll through the arbitration agreement before he accepted it. He claimed his personnel file (an exhibit to the Lessard declaration) indicated he electronically signed multiple onboarding documents simultaneously, which "directly contradicted" the defendants' assertion he was "required to scroll through each document before clicking to accept." Further, he asked for a chance to propound discovery requests pertaining to contract formation.

Given the parties' disputes concerning the circumstances of contract formation, we remand the matter for the trial court to determine whether the parties entered into an enforceable agreement to arbitrate.[7] (See *Piplack, supra*, 88 Cal.App.5th at p. 1290 [remanding matter for trial court to resolve disputes relating to formation and disaffirmance of arbitration agreement]; accord *Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1146 [remanding matter for trial court to conduct "fact-specific inquiry" of circumstances under which arbitration agreement was formed].)

---

[7] On appeal, Reynante argues that the trial court should not dismiss his representative PAGA claims if it compels arbitration of his individual PAGA claims. We do not address this issue, which is both premature and unnecessary to the disposition of this appeal.

IV

DISPOSITION

The order denying the motion to compel arbitration is reversed. The matter is remanded for further proceedings consistent with the opinions expressed herein. The trial court may, in its discretion, consider any requests by the parties to submit further evidence on any disputed factual issues.

McCONNELL, P. J.

WE CONCUR:

DO, J.

BUCHANAN, J.