Chief Justice ROBERTS delivered the opinion of the Court.
*1412 The Federal Arbitration Act requires courts to enforce covered arbitration agreements according to their terms. See 9 U.S.C. § 2. In Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp. , 559 U.S. 662, 130 S.Ct. 1758, 176 L.Ed.2d 605 (2010), we held that a court may not compel arbitration on a classwide basis when an agreement is "silent" on the availability of such arbitration. Because class arbitration fundamentally changes the nature of the "traditional individualized arbitration" envisioned by the FAA, Epic Systems Corp. v. Lewis , 584 U.S. ----, ----, 138 S.Ct. 1612, 1623, 200 L.Ed.2d 889 (2018), "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so," Stolt-Nielsen , 559 U.S. at 684, 130 S.Ct. 1758 (emphasis in original). We now consider whether the FAA similarly bars an order requiring class arbitration when an agreement is not silent, but rather "ambiguous" about the availability of such arbitration.
I
Petitioner Lamps Plus is a company that sells light fixtures and related products. In 2016, a hacker impersonating a company official tricked a Lamps Plus employee into disclosing the tax information of approximately 1,300 other employees. Soon after, a fraudulent federal income tax return was filed in the name of Frank Varela, a Lamps Plus employee and respondent here.
*1413 Like most Lamps Plus employees, Varela had signed an arbitration agreement when he started work at the company. But after the data breach, he sued Lamps Plus in Federal District Court in California, bringing state and federal claims on behalf of a putative class of employees whose tax information had been compromised. Lamps Plus moved to compel arbitration on an individual rather than classwide basis, and to dismiss the lawsuit. In a single order, the District Court granted the motion to compel arbitration and dismissed Varela's claims without prejudice. But the court rejected Lamps Plus's request for individual arbitration, instead authorizing arbitration on a classwide basis. Lamps Plus appealed the order, arguing that the court erred by compelling class arbitration.
The Ninth Circuit affirmed. 701 Fed. Appx. 670 (2017). The court acknowledged that Stolt-Nielsen prohibits forcing a party "to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so" and that Varela's agreement "include[d] no express mention of class proceedings." 701 Fed. Appx., at 672. But that did not end the inquiry, the court reasoned, because the fact that the agreement "does not expressly refer to class arbitration is not the 'silence' contemplated in Stolt-Nielsen ." Ibid. In Stolt-Nielsen , the parties had stipulated that their agreement was silent about class arbitration. Because there was no such stipulation here, the court concluded that Stolt-Nielsen was not controlling.
The Ninth Circuit then determined that the agreement was ambiguous on the issue of class arbitration. On the one hand, as Lamps Plus argued, certain phrases in the agreement seemed to contemplate "purely binary claims." Ibid. At the same time, as Varela asserted, other phrases were capacious enough to include class arbitration, such as one stating that "arbitration shall be in lieu of any and all lawsuits or other civil legal proceedings relating to my employment." Ibid. The Ninth Circuit followed California law to construe the ambiguity against the drafter, a rule that "applies with peculiar force in the case of a contract of adhesion" such as this. Ibid. (quoting Sandquist v. Lebo Auto., Inc. , 1 Cal. 5th 233, 248, 205 Cal.Rptr.3d 359, 376 P.3d 506, 514 (2016) ). Because Lamps Plus had drafted the agreement, the court adopted Varela's interpretation authorizing class arbitration. Judge Fernandez dissented. In his view, the agreement was not ambiguous, and the majority's holding was a "palpable evasion of Stolt-Nielsen ." 701 Fed. Appx., at 673.
Lamps Plus petitioned for a writ of certiorari, arguing that the Ninth Circuit's decision contravened Stolt-Nielsen and created a conflict among the Courts of Appeals. In opposition, Varela not only disputed those contentions but also argued for the first time that the Ninth Circuit lacked jurisdiction over the appeal, and that this Court therefore lacked jurisdiction in turn. We granted certiorari. 584 U.S. ----, 138 S.Ct. 1697, 200 L.Ed.2d 948 (2018).
II
We begin with jurisdiction. Section 16 of the FAA governs appellate review of arbitration orders. 9 U.S.C. § 16. Varela contends that the Ninth Circuit lacked statutory jurisdiction because section 16 permits appeal from orders denying motions to compel arbitration, § 16(a)(1)(B), but not orders granting such motions, § 16(b)(2). Brief for Respondent 9-12; see also post , at ---- (BREYER, J., dissenting). This argument is beside the point, however, because Lamps Plus relies *1414 for jurisdiction on a different provision of section 16, section 16(a)(3).
Section 16(a)(3) provides that an appeal may be taken from "a final decision with respect to an arbitration that is subject to this title." We construed that provision in Green Tree Financial Corp.-Ala. v. Randolph , 531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000), a case where, as here, the District Court had issued an order both compelling arbitration and dismissing the underlying claims. We held that such an order directing "the parties to proceed to arbitration, and dismiss[ing] all the claims before [the court], ... is 'final' within the meaning of § 16(a)(3), and therefore appealable." Id. , at 89, 121 S.Ct. 513.[1]
Varela attempts to distinguish Randolph on the ground that the appeal here was taken by the party who sought an order to dismiss the claim and compel arbitration, Lamps Plus. He claims the company "lacked standing to appeal the dismissal," because the District Court's order "provided precisely the relief Lamps Plus sought." Brief for Respondent 13, 15.
But Lamps Plus did not secure the relief it requested. It sought an order compelling individual arbitration. What it got was an order rejecting that relief and instead compelling arbitration on a classwide basis. We have explained-and will elaborate further below-that shifting from individual to class arbitration is a "fundamental" change, Stolt-Nielsen , 559 U.S. at 686, 130 S.Ct. 1758, that "sacrifices the principal advantage of arbitration" and "greatly increases risks to defendants," AT&T Mobility LLC v. Concepcion , 563 U.S. 333, 348, 350, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011). Lamps Plus's interest in avoiding those consequences gives it the "necessary personal stake in the appeal" required by our precedent. Camreta v. Greene , 563 U.S. 692, 702, 131 S.Ct. 2020, 179 L.Ed.2d 1118 (2011).[2]
III
The Ninth Circuit applied California contract law to conclude that the parties' agreement was ambiguous on the availability of class arbitration. In California, an agreement is ambiguous "when it is capable of two or more constructions, both *1415 of which are reasonable." 701 Fed. Appx., at 672 (quoting Powerine Oil Co. v. Superior Ct. , 37 Cal. 4th 377, 390, 33 Cal.Rptr.3d 562, 118 P.3d 589, 598 (2005) ). Following our normal practice, we defer to the Ninth Circuit's interpretation and application of state law and thus accept that the agreement should be regarded as ambiguous. See, e.g. , Expressions Hair Design v. Schneiderman , 581 U.S. ----, ----, 137 S.Ct. 1144, 1149-50, 197 L.Ed.2d 442 (2017).[3]
We therefore face the question whether, consistent with the FAA, an ambiguous agreement can provide the necessary "contractual basis" for compelling class arbitration. Stolt-Nielsen , 559 U.S. at 684, 130 S.Ct. 1758. We hold that it cannot-a conclusion that follows directly from our decision in Stolt-Nielsen . Class arbitration is not only markedly different from the "traditional individualized arbitration" contemplated by the FAA, it also undermines the most important benefits of that familiar form of arbitration. Epic Systems , 584 U.S., at ----, 138 S.Ct., at 1623 ; see Stolt-Nielsen , 559 U.S. at 686-687, 130 S.Ct. 1758. The statute therefore requires more than ambiguity to ensure that the parties actually agreed to arbitrate on a classwide basis.
A
The FAA requires courts to "enforce arbitration agreements according to their terms." Epic Systems , 584 U.S., at ----, 138 S.Ct., at 1621 (quoting American Express Co. v. Italian Colors Restaurant , 570 U.S. 228, 233, 133 S.Ct. 2304, 186 L.Ed.2d 417 (2013) ). Although courts may ordinarily accomplish that end by relying on state contract principles, First Options of Chicago, Inc. v. Kaplan , 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995), state law is preempted to the extent it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives" of the FAA, Concepcion , 563 U.S. at 352, 131 S.Ct. 1740 (internal quotation marks omitted). At issue in this case is the interaction between a state contract principle for addressing ambiguity and a "rule[ ] of fundamental importance" under the FAA, namely, that arbitration "is a matter of consent, not coercion." Stolt-Nielsen , 559 U.S. at 681, 130 S.Ct. 1758 (internal quotation marks omitted).
"[T]he first principle that underscores all of our arbitration decisions" is that "[a]rbitration is strictly a matter of consent." Granite Rock Co. v. Teamsters , 561 U.S. 287, 299, 130 S.Ct. 2847, 177 L.Ed.2d 567 (2010) (internal quotation marks omitted). We have emphasized that "foundational FAA principle" many times. Stolt-Nielsen , 559 U.S. at 684, 130 S.Ct. 1758 ; see also, e.g. , Howsam v. Dean Witter Reynolds, Inc. , 537 U.S. 79, 83, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002) ; First Options , 514 U.S. at 943, 115 S.Ct. 1920 ; Mastrobuono v. Shearson Lehman Hutton, Inc. , 514 U.S. 52, 57, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995) ;
*1416 Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ. , 489 U.S. 468, 479, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989) ; Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc. , 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985).
Consent is essential under the FAA because arbitrators wield only the authority they are given. That is, they derive their "powers from the parties' agreement to forgo the legal process and submit their disputes to private dispute resolution." Stolt-Nielsen , 559 U.S. at 682, 130 S.Ct. 1758. Parties may generally shape such agreements to their liking by specifying with whom they will arbitrate, the issues subject to arbitration, the rules by which they will arbitrate, and the arbitrators who will resolve their disputes. Id. , at 683-684, 130 S.Ct. 1758. Whatever they settle on, the task for courts and arbitrators at bottom remains the same: "to give effect to the intent of the parties." Id. , at 684, 130 S.Ct. 1758.
In carrying out that responsibility, it is important to recognize the "fundamental" difference between class arbitration and the individualized form of arbitration envisioned by the FAA. Epic Systems , 584 U.S., at ----, 138 S.Ct., at 1622-1623 ; see also Concepcion , 563 U.S. at 349, 351, 131 S.Ct. 1740 ; Stolt-Nielsen , 559 U.S. at 686-687, 130 S.Ct. 1758. In individual arbitration, "parties forgo the procedural rigor and appellate review of the courts in order to realize the benefits of private dispute resolution: lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes." Id. , at 685, 130 S.Ct. 1758. Class arbitration lacks those benefits. It "sacrifices the principal advantage of arbitration-its informality-and makes the process slower, more costly, and more likely to generate procedural morass than final judgment." Concepcion , 563 U.S. at 348, 131 S.Ct. 1740. Indeed, we recognized just last Term that with class arbitration "the virtues Congress originally saw in arbitration, its speed and simplicity and inexpensiveness, would be shorn away and arbitration would wind up looking like the litigation it was meant to displace." Epic Systems , 584 U.S., at ----, 138 S.Ct., at 1623. Class arbitration not only "introduce[s] new risks and costs for both sides," ibid. , it also raises serious due process concerns by adjudicating the rights of absent members of the plaintiff class-again, with only limited judicial review. See Concepcion , 563 U.S., at 349, 131 S.Ct. 1740 ; see also Stolt-Nielsen , 559 U.S. at 686, 130 S.Ct. 1758 (citing Ortiz v. Fibreboard Corp. , 527 U.S. 815, 846, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999) ).
Because of these "crucial differences" between individual and class arbitration, Stolt-Nielsen explained that there is "reason to doubt the parties' mutual consent to resolve disputes through classwide arbitration." 559 U.S. at 687, 685-686, 130 S.Ct. 1758. And for that reason, we held that courts may not infer consent to participate in class arbitration absent an affirmative "contractual basis for concluding that the party agreed to do so." Id. , at 684, 130 S.Ct. 1758. Silence is not enough; the "FAA requires more." Id. , at 687, 130 S.Ct. 1758.
Our reasoning in Stolt-Nielsen controls the question we face today. Like silence, ambiguity does not provide a sufficient basis to conclude that parties to an arbitration agreement agreed to "sacrifice[ ] the principal advantage of arbitration." Concepcion , 563 U.S. at 348, 131 S.Ct. 1740.
This conclusion aligns with our refusal to infer consent when it comes to other fundamental arbitration questions. For example, we presume that parties have not authorized arbitrators to resolve certain "gateway" questions, such as "whether the parties have a valid arbitration agreement at all or whether a concededly *1417 binding arbitration clause applies to a certain type of controversy." Green Tree Financial Corp. v. Bazzle , 539 U.S. 444, 452, 123 S.Ct. 2402, 156 L.Ed.2d 414 (2003) (plurality opinion). Although parties are free to authorize arbitrators to resolve such questions, we will not conclude that they have done so based on "silence or ambiguity" in their agreement, because "doing so might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide." First Options , 514 U.S. at 945, 115 S.Ct. 1920 (emphasis added); see also Howsam , 537 U.S. at 83-84, 123 S.Ct. 588. We relied on that same reasoning in Stolt-Nielsen , 559 U.S. at 686-687, 130 S.Ct. 1758, and it applies with equal force here. Neither silence nor ambiguity provides a sufficient basis for concluding that parties to an arbitration agreement agreed to undermine the central benefits of arbitration itself.[4]
B
The Ninth Circuit reached a contrary conclusion based on California's rule that ambiguity in a contract should be construed against the drafter, a doctrine known as contra proferentem . The rule applies "only as a last resort" when the meaning of a provision remains ambiguous after exhausting the ordinary methods of interpretation. 3 A. Corbin, Contracts § 559, pp. 268-270 (1960). At that point, contra proferentem resolves the ambiguity against the drafter based on public policy factors, primarily equitable considerations about the parties' relative bargaining strength. See 2 E. Farnsworth, Contracts § 7.11, pp. 300-304 (3d ed. 2004); see also 11 R. Lord, Williston on Contracts § 32:12, pp. 788-792 (4th ed. 2012) (stating that application of the rule may vary based on "the degree of sophistication of the contracting parties or the degree to which the contract was negotiated"); Restatement (Second) of Contracts § 206, pp. 80-81, 105 - 107 (1979) (classifying contra proferentem under "Considerations of Fairness and the Public Interest" rather than with rules for interpreting "The Meaning of Agreements"); 3 Corbin, Contracts § 559, at 270 (noting that contra proferentem is "chiefly a rule of public policy"). Although the rule enjoys a place in every hornbook and treatise on contracts, we noted in a recent FAA case that "the reach of the canon construing contract language against the drafter must have limits, no matter who the drafter was." DIRECTV, Inc. v. Imburgia , 577 U.S. ----, ----, 136 S.Ct. 463, 470, 193 L.Ed.2d 365 (2015). This case brings those limits into focus.
Unlike contract rules that help to interpret the meaning of a term, and thereby uncover the intent of the parties, contra proferentem is by definition triggered only after a court determines that it cannot discern the intent of the parties. When a contract is ambiguous, contra proferentem provides a default rule based on public policy considerations; "it can scarcely be said to be designed to ascertain the meanings attached by the parties." 2 Farnsworth, Contracts § 7.11, at 303. Like the contract rule preferring interpretations that favor the public interest, see id., at 304, contra proferentem seeks ends other than the intent of the parties.
"[C]lass arbitration, to the extent it is manufactured by [state law] rather *1418 than consen[t], is inconsistent with the FAA." Concepcion , 563 U.S. at 348, 131 S.Ct. 1740. We recently reiterated that courts may not rely on state contract principles to "reshape traditional individualized arbitration by mandating classwide arbitration procedures without the parties' consent." Epic Systems , 584 U.S., at ----, 138 S.Ct., at 1623. But that is precisely what the court below did, requiring class arbitration on the basis of a doctrine that "does not help to determine the meaning that the two parties gave to the words, or even the meaning that a reasonable person would have given to the language used." 3 Corbin, Contracts § 559, at 269-270. Such an approach is flatly inconsistent with "the foundational FAA principle that arbitration is a matter of consent." Stolt-Nielsen , 559 U.S. at 684, 130 S.Ct. 1758.
Varela and Justice KAGAN defend application of the rule on the basis that it is nondiscriminatory. It does not conflict with the FAA, they argue, because it is a neutral rule that gives equal treatment to arbitration agreements and other contracts alike. See Brief for Respondent 18, 25-26; post , at ---- - ---- (KAGAN, J., dissenting). We have explained, however, that such an equal treatment principle cannot save from preemption general rules "that target arbitration either by name or by more subtle methods, such as by 'interfer[ing] with fundamental attributes of arbitration.' " Epic Systems , 584 U.S., at ----, 138 S.Ct., at 1622 (quoting Concepcion , 563 U.S. at 344, 131 S.Ct. 1740 ).
That was the case in Concepcion . There, the Court considered the general contract defense of unconscionability, which had been interpreted by the state court to bar class action waivers in consumer contracts, whether in the litigation or arbitration context. See id ., at 341-344, 131 S.Ct. 1740. The general applicability of the rule did not save it from preemption under the FAA with respect to arbitration agreements, because it had the consequence of allowing any party to a consumer arbitration agreement to demand class proceedings "without the parties' consent." Epic Systems , 584 U.S., at ----, 138 S.Ct., at 1623 (describing the "essential insight" of Concepcion ). That, for the reasons we have explained, "interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." Concepcion , 563 U.S. at 344, 131 S.Ct. 1740 ; see Epic Systems , 584 U.S., at ---- - ----, 138 S.Ct., at 1622-1623. The same reasoning applies here: The general contra proferentem rule cannot be applied to impose class arbitration in the absence of the parties' consent.[5]
Our opinion today is far from the watershed Justice KAGAN claims it to be. Rather, it is consistent with a long line of cases holding that the FAA provides the default rule for resolving certain ambiguities in arbitration agreements. For example, we have repeatedly held that ambiguities about the scope of an arbitration agreement must be resolved in favor of arbitration.
*1419 See, e.g., Mitsubishi Motors Corp. , 473 U.S. at 626, 105 S.Ct. 3346 ; Moses H. Cone Memorial Hospital v. Mercury Constr. Corp. , 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). In those cases, we did not seek to resolve the ambiguity by asking who drafted the agreement. Instead, we held that the FAA itself provided the rule. As in those cases, the FAA provides the default rule for resolving ambiguity here.
* * *
Courts may not infer from an ambiguous agreement that parties have consented to arbitrate on a classwide basis. The doctrine of contra proferentem cannot substitute for the requisite affirmative "contractual basis for concluding that the part[ies] agreed to [class arbitration]." Stolt-Nielsen , 559 U.S. at 684, 130 S.Ct. 1758.
We reverse the judgment of the Court of Appeals for the Ninth Circuit and remand the case for further proceedings consistent with this opinion.
It is so ordered.

Justice Breyer repeatedly refers to the order in this case as "interlocutory," post , at ---- - ---- (dissenting opinion), but-as the language quoted above makes clear-Randolph expressly held that such an order is "final" under the FAA. Justice BREYER also claims that Randolph "explicitly reserved the [jurisdictional] question that we face now," post , at ----, but Randolph reserved a different question. In that case, the District Court had denied a motion to stay. We noted that, if the District Court had entered a stay instead of dismissing the case, an appeal would have been barred by 9 U.S.C. § 16(b)(1). That said, we expressly refrained from addressing whether the District Court should have granted the stay. See 531 U.S. at 87, n. 2, 121 S.Ct. 513. That is the question we reserved. Justice BREYER would have us take up that question today, post , at ----, ----, but there is no basis for doing so. The FAA provides that a district court "shall on application of one of the parties stay" the case pending the arbitration. 9 U.S.C. § 3 (emphasis added). Here, no party sought a stay. Thus, Justice BREYER's jurisdictional analysis is premised on two events that did not happen-a District Court ruling that was never issued denying a stay request that was never made. In short, Justice BREYER has written an opinion for a case other than the one before us.

And contrary to Varela's contention, Brief for Respondent 14-15, and Justice BREYER's dissent, post , at ---- - ----, this is hardly a case like Microsoft Corp . v. Baker , 582 U.S. ----, 137 S.Ct. 1702, 198 L.Ed.2d 132 (2017). There, we held that plaintiffs cannot generate a final appealable order by voluntarily dismissing their claim. Here, Lamps Plus was the defendant, and the District Court compelled class arbitration over the company's vigorous opposition.

Justice KAGAN offers her own interpretation of the contract, concludes that it unambiguously authorizes class arbitration, post , at ---- - ----, and criticizes us for "disregard[ing] the actual contract the parties signed," post , at ----. Justice SOTOMAYOR, on the other hand, concludes that the contract is ambiguous about class arbitration but criticizes us for treating the contract as ... ambiguous. Post, at ---- - ---- (dissenting opinion). Again, we simply follow this Court's ordinary approach, which "accord[s] great deference" to the courts of appeals in their interpretation of state law. Expressions Hair Design , 581 U.S., at ----, 137 S.Ct., at 1149 (quoting Pembaur v. Cincinnati , 475 U.S. 469, 484 n. 13, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (collecting cases)).

This Court has not decided whether the availability of class arbitration is a so-called "question of arbitrability," which includes these gateway matters. Oxford Health Plans LLC v. Sutter , 569 U.S. 564, 569, n. 2, 133 S.Ct. 2064, 186 L.Ed.2d 113 (2013). We have no occasion to address that question here because the parties agreed that a court, not an arbitrator, should resolve the question about class arbitration.

Varela and Justice KAGAN contend that our use of contra proferentem in Mastrobuono v. Shearson Lehman Hutton, Inc. , 514 U.S. 52, 57, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995), establishes that the rule is not preempted by the FAA. Brief for Respondent 33-35; post, at ---- (dissenting opinion). In Mastrobuono , however, we had no occasion to consider a conflict between the FAA and contra proferentem because both rules led to the same result. Our holding was primarily based on the FAA policy favoring arbitration, 514 U.S. at 62, 115 S.Ct. 1212, and only after establishing that did we apply contra proferentem , noting that the rule was "well suited to the facts of this case," id. , at 63, 115 S.Ct. 1212. See also EEOC v. Waffle House, Inc. , 534 U.S. 279, 293, n. 9, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002) (explaining that Mastrobuono resolved an ambiguous provision by "read[ing] the agreement to favor arbitration under the FAA rules").