Light & Wonder, Inc. v Mohawk Gaming Enters. LLC (2025 NY Slip Op 51070(U))

[*1]

Light & Wonder, Inc. v Mohawk Gaming Enters. LLC

2025 NY Slip Op 51070(U)

Decided on July 2, 2025

Supreme Court, New York County

Chan, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on July 2, 2025
Supreme Court, New York County

Light & Wonder, Inc. and LNW GAMING, INC., Petitioners,

against
Mohawk Gaming Enterprises LLC, Respondent.

Index No. 650148/2025

Counsel for Petitioners: Keith R. Hummel, Kevin J. Orsini, and Brittany L. Sukiennik of Cravath, Swaine & Moore LLP
Counsel for Respondent: Michael Eisenkraft, Jared A. Dummitt, Manuel J. Dominguez, and Nina Jaffe-Geffner of Cohen Milstein Sellers & Toll PLLC

Margaret A. Chan, J.

The following e-filed documents, listed by NYSCEF document number (MS001) 2, 34, 39, 44, 45, 46, 47, 48, 49, 50, 53, 56 were read on this motion to/for VACATE - DECISION/ORDER/JUDGMENT/AWARD.
In this special proceeding brought pursuant Section 10 of the Federal Arbitration Act (FAA) and Article 75 of the CPLR, petitioners Light & Wonder, Inc. and LNW Gaming, Inc. (together, LNW) move, by order to show cause, for an order vacating an arbitration award issued in an arbitration proceeding pending before the American Arbitration Association (AAA) captioned Mohawk Gaming Enterprises LLC, et al. v Scientific Games Corporation, et al., AAA No. 1-20-0015-6196 (NYSCEF #s 1, 34). Respondent Mohawk Gaming Enterprises LLC (Mohawk) opposes LNW's motion and cross-moves for an order confirming the arbitration award (NYSCEF # 49). The court held oral arguments on LNW's motion and Mohawk's cross-motion on March 20, 2025 (NYSCEF # 56). For the following reasons, LNW's motion is denied and Mohawk's cross-motion is granted.
Background
LNW is a manufacturer, designer, and marketer of various automatic card shufflers used by casinos to shuffle playing cards (NYSCEF # 1 — Pet ¶ 9). Mohawk owns and operates a casino (id. ¶ 10). In early 2015, Mohawk and a predecessor of LNW, Bally Gaming, Inc., executed a contract to govern the sale of card shufflers and other gaming equipment to Mohawk (the Mohawk Agreement) (id. ¶ 14; NYSCEF # 6 — Agreement). As is relevant, the Mohawk Agreement provided that
any and all controversies, disputes or claims of any nature arising directly or indirectly out of or in connection with this Agreement (including without limitation claims relating to the validity, performance, breach, and/or termination of this Agreement) shall be submitted to binding arbitration for final resolution. The arbitration shall follow the Commercial Arbitration Rules of the [AAA]
(Agreement § 6.6[c]; see also Pet ¶ 16).
On November 9, 2020, Mohawk commenced an arbitration proceeding against LNW before the AAA (Pet ¶ 11). In its arbitration demand, Mohawk alleged that LNW violated the Sherman Act by unlawfully monopolizing an antitrust market of automatic shufflers through anticompetitive conduct (NYSCEF # 7 ¶¶ 1-5, 135-141). As a result, Mohawk further contended, it and other LNW customers overpaid for card shufflers (id. ¶¶ 4, 9, 123-124). Mohawk's action was brought "on its own behalf and as a class arbitration pursuant to Rule 4 of the AAA Supplementary Rules for Class Arbitration" (id. ¶ 123). This proceeding was one of several challenges to LNW's purported anticompetitive conduct (id. ¶ 3, citing Shuffle Tech Int'l LLC v Scientific Games Corp., No. 15-cv-3702 [ND Ill]; TCS John Huxley Am., Inc. v Scientific Games Corp., No. 19-cv-1846 [ND Ill]).
The Mohawk arbitration was heard by Arbitrator John H. Wilkinson (the Arbitrator). The first major dispute before the Arbitrator concerned the issue of whether Mohawk could bring its antitrust action as a class arbitration (NYSCEF # 8 at 1). By an award, dated February 8, 2022, the Arbitrator determined that Section 6.6(c) of the Mohawk Agreement "permit[ted] th[e] arbitration to proceed on behalf of a class or classes" (NYSCEF # 9 — Clause Construction Award at 18). In reaching this determination, the Arbitrator first observed that the United States Supreme Court cases of Stolt-Nielsen S.A. v AnimalFeeds Intl. Corp. (559 US 662 [2010]) and Lamps Plus Inc. v Varela (587 US 176 [2019]) "set the ground rules within which any such interpretation of [Section 6.6(c)] should be made" (id. at 3-8). The Arbitrator then applied these "ground rules" to interpret Section 6.6(c) (id. at 8-12). As the Arbitrator concluded, although Section 6.6(c) did not include any language concerning class arbitration, the "strikingly broad language . . . must be given significance and meaning," which meant that the "sweeping language" of the clause "encompasse[d] class arbitrations" (id. at 12, 17).
Following the issuance of the Clause Construction Award, LNW moved to vacate the award in New York state court, arguing that the Arbitrator exceeded his authority under the Mohawk Agreement by inserting an "unambiguous" class arbitration provision into the agreement (Pet ¶ 22; NYSCEF # 10 ¶ 29). The trial court rejected LNW's challenge to the Clause Construction Award and instead confirmed the award upon Mohawk's cross-motion (see Pet ¶ 22). The trial court's decision was then subsequently affirmed on appeal by the First Department (id.; see also Matter of Scientific Games Corp. v Mohawk Gaming Enters. LLC, 217 AD3d 556 [1st Dept 2023]).
Two years after the Arbitrator issued the Clause Construction Award, Mohawk moved for class certification (Pet ¶ 23; NYSCEF # 11 at 1-3). Through its motion, Mohawk sought to certify a class that consisted of
All persons and entities that directly purchased or leased automatic card shufflers within the United States, its territories and the District of Columbia from any Respondent or any predecessor, subsidiary or affiliate thereof, at any time between April 1, 2009 and December 31, 2022, and that agreed in writing to arbitrate disputes arising from such purchases or leases under the rules of the [AAA]
(NYSCEF # 11 at 2). Two months later, on April 19, 2024, LNW filed its opposition to Mohawk's class certification motion (Pet ¶ 24; NYSCEF # 12). In its opposition, LNW argued that it had not agreed to resolve the claims of absent putative class members through class arbitration, and it invoked the standard articulated in Lamps Plus to support its position (NYSCEF # 12 at 3-15). LNW also argued, citing examples, that many of the absent class members' arbitration clauses did not include the same "strikingly broad" language included in the Mohawk Agreement, and thus those absent class members would not have contemplated class arbitration under the Lamps Plus standard (id. at 6-9; see also NYSCEF #s 13-16). Finally, LNW asserted that the Arbitrator was required to "undertake a clause-by-clause analysis to determine whether the absent class members' agreements permit[] classwide arbitration," and upon such a review, LNW continued, it would be apparent that the absent class members did not agree to be part of a class (see NYSCEF # 12 at 11; Pet ¶ 27).
Briefing on Mohawk's motion concluded on May 23, 2024 (NYSCEF # 17 at 21). LNW asserts that at no point following the conclusion of briefing did the Arbitrator request to be provided with each of the putative absent class members' contracts (Pet ¶ 28). Instead, on December 9, 2024, the Arbitrator issued an award certifying a proposed opt-out class that substantially adopted Mohawk's proposed class definition (id. ¶ 29; NYSCEF # 5 — the Class Determination Award).
In the Class Determination Award, the Arbitrator first analyzed Mohawk's motion pursuant to the factors set forth in Rules 4(a) and (b) of the AAA's Supplementary Rules for Class Certification (the AAA Rule 4 Factors) (Class Determination Award at 3). Applying the AAA Rule 4 Factors, the Arbitrator determined that Mohawk had established numerosity of the class, questions of law or fact that were common to the class, typicality of the claims or defenses of the class, adequacy of class representation, adequacy of class counsel, and the superiority of class arbitration to other available methods for the fair and efficient adjudication of the controversy (id. at 4-8, 12-14).
The Arbitrator then addressed the AAA Rule 4 Factor requiring a showing that each class member had entered into an agreement containing a "substantially similar" arbitration clause as compared to the one contained in the agreement signed by the class representative (Class Determination Award at 8-12). On this point, the Arbitrator concluded that Mohawk had met this requirement because (1) each class member had agreed to adopt the AAA Arbitration Rules, thus consenting to AAA-administered arbitration, (2) the arbitration clauses signed by all proposed class members encompassed claims in Mohawk's arbitration demand and covered the same period of time, and (3) "[t]here ha[d] been nothing brought to the Arbitrator's attention suggesting that anything in any of the class clauses directly preclude[d] class arbitration" (see id. at 8-9).
Critically, in reaching this conclusion, the Arbitrator expressly rejected LNW's reliance on Lamps Plus, observing that its "holding related to the class representative and his arbitration agreement—it had nothing to do with absent class members" (Class Arbitration Award at 9-10). The Arbitrator reasoned that "absent class members are in a different position and have certain unique safeguards [that] the class representative and [LNW] do not," including, among others, opportunities to opt-out (id. at 10-11). The Arbitrator also posited that "if one were to turn long-accepted doctrine on its head and require analysis, for example, of 100,000 arbitration contracts of absent class members, that would either grind the process to a complete halt or would render it so unwieldy and expensive as to be completely ineffective" (id. at 11). Finally, pointing to the [*2]example arbitration clauses supplied by LNW, the Arbitrator concluded that the "[n]arrow differences" between them provided "no basis for decertifying the class" (id. at 11-12). Specifically, the Arbitrator continued, "absent class members are [often] fine with adopting the language of the majority and, if not, they are fully protected by the option to opt out of the class" (id., citing Phillips Petroleum Co. v Shutts, 472 US 797, 810-11 [1985]; Pet ¶ 34).
On December 10, 2024, following the issuance of the Class Determination Award, proceedings were stayed for 30 days "to permit the parties to move a court of competent jurisdiction to confirm or vacate the Class Determination Award" (Pet ¶ 35; NYSCEF # 4 at 1). This Petition to Vacate Class Determination Award was then filed by LNW on January 9, 2025 (NYSCEF # 1).
Discussion
In its motion, LNW seeks to vacate the Class Determination Award primarily on the basis that the Arbitrator erroneously certified a class of all LNW customers with arbitration clauses in their licensing agreements with LNW without reviewing whether those agreements contained a consent to arbitrate on a class basis (NYSCEF # 25 — MOL at 8-16). LNW maintains that the Arbitrator should have engaged in an analysis guided by the United States Supreme Court's decisions in Stolt-Nielsen and Lamps Plus to assess whether absent class members consented to arbitration (id. at 10-13; NYSCEF # 53 — Reply at 2-5). Had he done so, LNW continues, the Arbitrator would not have found an evidentiary basis to conclude that LNW and each absent class member agreed to class proceedings (MOL at 13).
Given the Arbitrator's failure to follow Lamps Plus and its progeny and to analyze the absent class members' contracts' arbitration clauses, LNW argues that there are three bases under which the court should vacate the Class Certification Award (MOL at 16-21; Reply at 8-10). First, LNW avers that the Class Determination Award must be vacated because the Arbitrator exceeded his contractual authority by imposing his own policy justifications for class-wide arbitration instead of interpreting the relevant absent class members' agreements (MOL at 17). Second, LNW argues that by failing to follow Stolt-Nielsen and Lamps Plus, the Arbitrator disregarded well-established law governing class arbitration (id. at 18-19). Finally, LNW asserts that vacatur of the Class Determination Award is proper because the Arbitrator was required, but failed, to consider the absent class members' contracts in order to determine whether class certification was appropriate under the AAA Rule 4 Factors (id. at 19-20).
Mohawk counters that LNW cannot demonstrate that the Arbitrator's analysis of the AAA Rule 4 Factors, which included his reasoned rejection of the applicability of Lamps Plus and its progeny, was erroneous because nothing in those cases ever considered issue of absent class members in its analysis or otherwise suggested that their holdings apply at the class certification stage (NYSCEF # 44 — Opp at 8-11, 18-19). Mohawk separately asserts that none of the grounds for vacatur advanced by LNW under Section 10(a)(4) of the FAA has merit (see id. at 18-21). In support, Mohawk avers that the Arbitrator could not have disregarded the law where Lamps Plus and Stolt-Nielsen are, at most, ambiguous as to their application to the class-certification stage of arbitration proceedings (id. at 19-20). And at any rate, given the three bases laid out by the Arbitrator in support of his decision, Mohawk asserts that the Arbitrator, at minimum, had a "colorable justification" for his position that was supported by a reasoned analysis and therefore could not have manifestly disregarded any law or contract (see id. at 11-16, 20-21).
Preliminarily, both parties agree that the FAA applies to their present dispute (see Wu v [*3]Uber Techs., Inc., 43 NY3d 288, 297-298 [2024] [analyzing challenge to arbitration award under FAA "[i]n this case, the parties agree that the arbitration agreement in Uber's January 2021 terms of use is governed by the Federal Arbitration Act (FAA)"]; Pezhman v Bloomingdales, Inc., 215 AD3d 603, 603 [1st Dept 2023] [engaging in review of arbitration award under FAA where the parties' arbitration agreement required review under the FAA). Under the FAA, if a party applies for an order confirming an arbitration award, the court "must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of" the FAA (9 USC § 9). The scope of judicial review of an arbitration proceeding is "extremely limited," and courts are obligated to give deference to the decision of the arbitrator when the arbitrator "offer[s] even a barely colorable justification for the outcome reached" (see Wien & Malkin LLP v. Helmsley-Spear, Inc., 6 NY3d 471, 479 [2006]). "A court may vacate an arbitration award only if it violates a strong public policy, is totally irrational, or clearly exceeds a specifically enumerated limitation on the arbitrator's power" (see Metro. Trans. Auth. v Westfield Fulton Ctr., LLC, 228 AD3d 435, 436 [1st Dept 2024], quoting Matter of Falzone [New York Cent. Mut. Fire Ins. Co.], 15 NY3d 530, 534 [2010] [alterations omitted])
The FAA permits a court to vacate an arbitration award in certain defined instances. As relevant here, Section 10(a)(4) provides that a court may vacate an award "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made" (9 USC § 10 [a] [4]). In essence, this provision "permits courts to vacate an arbitral decision only when the arbitrator strayed from his delegated task of interpreting a contract, not when he performed that task poorly" (see Nexia Health Tech., Inc. v Miratech, Inc., 176 AD3d 589, 591 [1st Dept 2019], quoting Oxford Health Plans LLC v Sutter, 569 US 564, 569 [2013] ["It is not enough . . . to show that the [arbitrator] committed an error—or even a serious error"]). A party seeking to vacate an award under this subsection of the FAA "bears a heavy burden" (id.). And "courts are obligated to give deference to the decision of the arbitrator . . . even if the arbitrator misapplied the substantive law in the area of the contract" (New York City Tr. Auth. v Transport Workers' Union of Am., Local 100, AFL-CIO, 6 NY3d 332, 336 [2005]).
In addition to the above-noted statutory ground for vacatur, courts have also observed that "an award may be vacated under federal law if it exhibits a 'manifest disregard of law'" (Wien & Malkin, 6 NY3d at 480). As the Court of Appeals has recognized, this is a "severely limited" doctrine that serves as a "last resort limited to the rare occurrences of apparent 'egregious impropriety' on the part of the arbitrators'" (id. at 480-481). Indeed, mere "error does not equate to a manifest disregard for the law" (Cantor Fitzgerald Sec. v Refco Sec., LLC, 83 AD3d 592, 593 [1st Dept 2011]). Instead, to conclude that arbitration award amounts to a manifest disregard of law, the court must find both of the following conditions: "(1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case" (Daesang Corp. v NutraSweet Co., 167 AD3d 1, 16 [1st Dept 2018]).
Here, applying these well-settled legal principles, the court concludes that LNW has failed to establish any grounds to vacate the Class Determination Award. At the outset, there is no basis to conclude from the record that the Arbitrator manifestly disregarded the law in rendering the Class Determination Award. In advancing this ground for vacatur, LNW avers that, before certifying any class, the Arbitrator was required, but failed, to consider whether the arbitration provisions found in each of the absent class members' contracts contemplated class [*4]arbitration—an analysis that is purportedly required under the binding precedents of Stolt-Nielsen and Lamps Plus. But even if LNW's reasoning is persuasive, it is not so clear that Stolt-Nielsen and Lamps Plus applied to the Arbitrator's class certification analysis. A thorough review of these two cases confirms this point.
In Stolt-Nielsen, the Supreme Court granted certiorari to decide whether imposing class arbitration on parties whose arbitration clauses are "silent" on that issue was consistent with the FAA (559 US 662 [2010]). Petitioners were shipping companies who entered into an agreement with respondent that contained an arbitration clause (id. at 667). Following a Department of Justice criminal investigation that revealed that petitioners were engaging in illegal price-fixing, respondent served petitioners with a demand for class arbitration in New York (id. at 668). The parties thereafter stipulated that the question of class arbitration would be decided by a panel and that the "arbitration clause was 'silent' with respect to class arbitration" (id. at 668-669). Eventually, after a hearing, the arbitration panel concluded that the arbitration clause allowed for class arbitration (id. at 669). The District Court for the Southern District of New York vacated the arbitration award, but the Court of Appeals then reversed and reinstated the award (id. at 671) The Supreme Court granted certiorari and vacated the award (id.).
To reach this decision, the Court concluded that the arbitration panel improperly "impose[d] its own view of sound policy regarding class arbitration" (559 US at 671). The Court observed that courts and arbitrator must "give effect to the contractual rights and expectations of the parties," noting the fundamental policy that "parties may specify with whom they choose to arbitrate their disputes" (id. at 682-684). Based on these principles, the Court continued, it "follow[ed] that a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so" (id. at 684). The Court noted that the arbitration panel regarded the "silence on the question of class arbitration as dispositive," which was a conclusion that was "fundamentally at war with the foundational FAA principle that arbitration is a matter of consent" (id.). Ultimately, the Court concluded, because "the differences between bilateral and class-action arbitration are too great," arbitrators could not "presume, consistent with their limited powers under the FAA, that the parties' mere silence on the issue of class-action arbitration constitutes consent to resolve their disputes in class proceedings" (id. at 687).
Nine years after Stolt-Nielsen, the Supreme Court revisited the issue of consent to class arbitration in Lamps Plus, Inc. v Varela (587 US 176 [2019]). In Lamps Plus, petitioner was sued by an employee in federal court on behalf of a putative class of employees whose information had been compromised in a data breach (id. at 179). Respondent, like most of petitioner's other employees, had signed an arbitration agreement, so petitioner moved to compel arbitration on an individual basis (id.). The district court granted the motion to compel arbitration, but it rejected petitioner's request for individual arbitration and instead authorized arbitration on a class wide basis (id.). On appeal the Ninth Circuit affirmed, noting that, although Stolt-Nielsen prohibited forcing a party to submit to class arbitration unless there is a contractual basis to do so, the agreement here was ambiguous on the issue (id. at 180). Then, applying California law to construe ambiguity against the drafter—in this case, petitioner—the Ninth Circuit determined that the appropriate interpretation of the arbitration agreement was one that authorized class arbitration (id.).
The Supreme Court reversed, holding that if an agreement is ambiguous as to the availability of class arbitration, it cannot provide a "contractual basis" for compelling class [*5]arbitration by a class representative (587 US at 183). In reaching this conclusion, the Court reiterated the principle espoused in Stolt-Nielsen that "[a]rbitration is strictly a matter of consent" (id. at 184). The court also noted that "it is important to recognize the 'fundamental' difference between class arbitration and the individualized form of arbitration envisioned by the FAA," noting that "[c]lass arbitration not only 'introduce[s] new risks and costs for both sides,' [but] it also raises serious due process concerns by adjudicating the rights of absent members of the plaintiff class—again, with only limited judicial review" (id. at 185). For this reason, and building on Stolt-Nielsen's holding, the Court held that "[l]ike silence, ambiguity does not provide a sufficient basis to conclude that parties to an arbitration agreement agreed to 'sacrifice[] the principal advantage of arbitration'" (id. at 185-186 ["Neither silence nor ambiguity provides a sufficient basis for concluding that parties to an arbitration agreement agreed to undermine the central benefits of arbitration itself"]).
There is no meaningful dispute that Stolt-Nielsen and Lamps Plus, when construed together, establish that (1) consent to submit a dispute to class arbitration must be discerned from the plain terms of the parties' arbitration agreement, and (2) such consent cannot be presumed from the arbitration agreement's silence or ambiguity on the issue. But critically, neither Stolt-Nielsen nor Lamps Plus addressed or otherwise extended the issue of consent to class arbitration in the context of certifying a class for arbitration. Recognizing this silence, the Arbitrator grappled with LNW's contention that the legal principles in Lamps Plus should be interpreted as governing his analysis at the class certification stage. He, in turn, clearly laid out his reasoning for why they did not, including a review of the central holdings in Lamps Plus, policy arguments, and an analysis of analogous case law and arbitration awards (see Class Determination Award at 9-12).
Reasonable minds can certainly differ as to whether the Arbitrator's determination was the correct conclusion to draw from the holdings of Stolt-Nielsen and Lamps Plus. But even assuming, without deciding, that the Arbitrator's application of Lamps Plus and progeny was erroneous, there is simply no basis to conclude from the record that his analysis and conclusion ignored "well defined, explicit, and clearly applicable" case law so as to constitute a manifest disregard of the law (Daesang, 167 AD3d at 16; see also McKenna, Long & Aldridge, LLP v Ironshore Specialty Ins. Co., 176 AD3d 526, 527 [1st Dept 2019] [holding that arbitration panel's award was not a "manifest disregard of the law" where "the panel considered the applicability of Delaware law and Doroshow, and distinguished the case, concluding that it was not applicable" and its conclusion "was, at worst, a mistake of law, which does not constitute manifest disregard"]; RSG Caulking & Waterproofing, Inc. v J.P. Morgan Chase & Co., 13 Misc 3d 1218(A), at *7 [Sup Ct, NY County, 2006] ["Where parties hotly dispute the applicable law and facts, as here, there is no well-defined, explicit, and clearly applicable law"]). To the contrary, given Stolt-Nielsen and Lamps Plus's silence on the issue of class certification, there was a notable lack of clearly defined and explicitly applicable law to guide the Arbitrator's class certification analysis (see T.Co Metals, LLC v Dempsey Pipe & Supply, Inc., 592 F3d 329, 339 [2d Cir 2010]). Therefore, the Arbitrator's decision not to follow Lamps Plus and progeny as part of his class-certification analysis is not a basis to vacate the set forth in the Class Determination Award.
The court next turns to whether the Arbitrator exceeded his authority under the FAA or manifestly disregarded any contracts in granting class certification. A careful review of the record makes clear that he did not. As noted above, the Class Determination Award came after [*6]the Arbitrator had rendered the Clause Construction Award, which had interpreted the Mohawk Agreement to encompasses class arbitrations against LNW (Clause Construction Award at 12, 17). Once that award was affirmed on appeal, the Arbitrator logically moved to the next step of the class arbitration proceedings: assessing the propriety of certifying a class under the relevant AAA rules—i.e., the very rules that LNW and Mohawk agreed govern any disputes under the Mohawk Agreement (see Mohawk Agreement § 6.6 [c]). Based on this analysis, the Arbitrator concluded that class certification was warranted (Class Determination Award at 12).
To make this determination, the Arbitrator addressed each of the AAA Rule 4 Factors, including the number of members in the class, the key issues to be arbitrated, the nature claims asserted against LNW, the adequacy of the class representative and counsel, the fairness and efficiency of class arbitration, and the similarity of the absent class members' arbitration clauses (Class Determination Award at 3-12). The Arbitrator also considered the reasoning in relevant case law (including Lamps Plus) and prior AAA award determinations, as well as the differences in the example arbitration clauses submitted by LNW. Hence, as the arbitration record establishes, the Arbitrator only reached a reasoned conclusion after addressing and grappling these authorities and documents (id.). Consequently, and contrary to LNW's assertion, the Arbitrator, at minimum, proffered a "colorable justification for the outcome reached" see Nexia, 176 AD3d at 591-592 [affirming confirmation of arbitration award where "arbitrator gave a colorable justification for the outcome reached"]). There is plainly no basis to conclude he exceeded his authority under the Mohawk Agreement, the AAA Rules, or the other absent class members' agreements.
That the Arbitrator did not consider each of the absent class members' contracts to assess whether they also contemplated class arbitration does not alter this conclusion or otherwise warrant a determination that the Arbitrator manifestly disregarded contract (see MOL at 19-20). As the Arbitrator recognized, AAA Class Rule 4(a)(6) requires that "each class member has entered into an agreement containing an arbitration clause which is substantially similar to that signed by the class representative(s) and each of the other class members" (see AAA Supplementary Rules for Class Arbitration R. 4[a][6]). The Arbitrator then applied Rule 4(a)(6) by considering the examples submitted by LNW—presumably the strongest examples in support of its opposition to class certification—and concluded that the differences that had been identified were "narrow" and did not preclude certification (Class Determination Award at 9-11). The Arbitrator also then noted that nothing had been brought to his attention suggesting any of the absent class members' agreements directly precluded class arbitration (id.). Accordingly, given the materials considered, the Arbitrator did, in fact, consider the relevant contracts that were before him as part of his assessment. Put differently, nothing in the Arbitrator's analysis "contradict[ed] an express and unambiguous term of [a] contract" or "depart[ed] from the terms of [any] agreement" so that it was "not even arguably derived from the contract" (Wien & Malkin, 6 NY3d at 485, quoting Westerbeke Corp. v Daihatsu Motor Co., Ltd., 304 F3d 200, 222 [2d Cir 2002]; see also Gemstar-TV Guide Intern., Inc. v Yuen, 17 Misc 3d 1135(A), at *6 [Sup Ct, NY County, 2007] [confirming arbitration award over objection where arbitrator's "ruling do not contradict any express terms in the parties' contracts, and are consonant with the general aim [*7]of the contracts considered as a whole"]).[FN1]

In sum, because LNW has failed to establish a basis to vacate or modify the Class Determination Award, its motion to vacate is denied and Mohawk's cross-motion to confirm the award must be granted (see 9 USC § 9 ["at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected" [emphasis added]]; CPLR 7510 ["The court shall confirm an award upon application of a party made within one year after its delivery to them, unless the award is vacated or modified" [emphasis added]]). The court has considered LNW's remaining contentions and finds them unavailing.
Conclusion
For the foregoing reasons, it is hereby
ORDERED that petitioners' motion and petition to vacate the Class Determination Award issued in Mohawk Gaming Enterprises LLC, et al. v. Scientific Games Corporation, et al., AAA No. 1-20-0015-6196, is denied; and it is further
ORDERED, ADJUDGED, and DECREED that respondent's cross-motion to confirm the Class Determination Award is granted and the Award is hereby confirmed; and it is further
ORDERED that the Clerk of the Court shall enter judgment in accordance with this Decision and Order and mark this action disposed; and it is further
ORDERED that respondent shall serve a copy of this order together with a notice of entry upon petitioners and the Clerk of the Court within 10 days of this order.
This constitutes the Decision and Order of the court.
DATE 7/02/2025
MARGARET A. CHAN, J.S.C.

Footnotes

Footnote 1:To the extent LNW maintains that a fulsome review of every single absent class member arbitration agreement was necessary under Lamps Plus, that contention plainly holds no water given that, as already explained, Lamps Plus and its progeny did not constitute well defined, explicit, and clearly applicable case law binding the Arbitrator.